Commonwealth *v.* Swanger, Appellant.

108

Submitted November 8, 1972; reargued April 24, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Frederick S. Wolf*, with him *Beaver & Wolf*, for appellant.

*George E. Christianson*, District Attorney and *Leonard Packel*, Deputy Attorney General, with them *David J. Brightbill*, Assistant District Attorney, *J. Andrew Smyser* and *Marc Kapustin*, Deputy Attorneys General, and *Israel Packel*, Attorney General, for Commonwealth, appellee.

*Paul D. Boas* and *Samuel A. Vitaro*, for amicus curiae.

OPINION BY MR. JUSTICE EAGEN, July 2, 1973:

The appellant, Glenn R. Swanger, was convicted by a jury of burglary. Post trial motions were denied and Swanger was sentenced to serve a term of ten to twenty years imprisonment. A timely appeal was filed in the Superior Court, which affirmed the judgment and conviction. Allocatur was granted by this Court and on November 8, 1972, the issue was submitted for decision without oral argument. On January 19, 1973, we reversed the judgment and conviction and remanded for a new trial. A petition for reargument by the attorney general of the Commonwealth was granted and the case was orally argued before the Court on April 24, 1973. After further consideration, we again reverse and remand the case for a new trial.

The following facts are established by the record:

On the night of April 1, 1970, at approximately 3:45 a.m., Swanger was a passenger in an automobile operated by one John Krall. Two Pennsylvania state police officers stopped the automobile for a "routine" check. The officers determined the operator of the vehicle did not have a valid driver's license, and the vehicle did not have valid registration plates. During the questioning, one of the officers pointed a flashlight in the automobile and noticed burglary tools on the floor of the vehicle. The two passengers were ordered to step out of the vehicle and placed under arrest for possession of burglary tools. Subsequent investigation linked appellant to a burglary, the conviction of which he challenges instantly.

Pretrial Swanger questioned the validity of the "routine" stop of the automobile and made a motion to suppress all evidence which was the fruit of the allegedly illegal stop. After a hearing, the motion to suppress was denied, notwithstanding the testimony of the arresting officer that he saw nothing unusual about the

vehicle or the manner in which it was operated before he ordered the stop.

Appellant argues the "routine" stop was violative of the Fourth Amendment,[1] whereas, the Commonwealth counterargues the officers could validly stop the vehicle under The Vehicle Code of Pennsylvania,[2] even though the officers observed nothing unusual about the vehicle beforehand. Initially, we emphasize the only issue here involved is whether a police officer may stop a single automobile without any outward sign of a violation of The Vehicle Code.[3]

The Supreme Court of the United States has made it clear the Fourth Amendment protects people wherever the individual may harbor a reasonable expectation of privacy. See *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507 (1967). Once it is established the individual is within an area where he has a reasonable expectation of privacy, he is entitled to be free from unreasonable intrusions by the government. See *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968).

---

[1] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

[2] The Vehicle Code, in pertinent part reads: "Any peace officer, who shall be in uniform, and shall exhibit his badge or other sign of authority, shall have the right to stop any vehicle, upon request, or signal, for the purpose of inspecting the said vehicle, as to its equipment and operation, or manufacturer's serial number or engine number, and securing of such other information as may be necessary." Act of April 29, 1959, P. L. 58, §1221, as amended, 75 P.S. §1221(b). See also Act of 1959, supra, §819, as amended, 75 P.S. §819(g); Act of 1959, supra, §834, as amended, 75 P.S. §834(g).

[3] This opinion should not be read as applicable to systematic stops or roadblocks for detection of The Vehicle Code violations. The issue of the validity of systematic stops of a large number of cars is not now before the Court.

An automobile is a place where an individual has a reasonable expectation of privacy. Cf. *Henry v. United States*, 361 U.S. 98, 80 S. Ct. 168 (1959); *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280 (1925); *Commonwealth v. Linde*, 448 Pa. 230, 293 A. 2d 62 (1972); *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A. 2d 727 (1972). Moreover, when a police officer stops a vehicle he has "seized" the vehicle and its occupants, and thus, the protections of the Fourth Amendment must be considered. Cf. *Terry v. Ohio*, supra.[4] *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968); *Commonwealth v. Pollard*, 450 Pa. 138, 299 A. 2d 233 (1973).

The crucial question, therefore, is whether the stop or seizure of the vehicle here was unreasonable and, therefore, constitutionally impermissible. In assessing the reasonableness of a seizure, the Supreme Court of the United States has set forth the following standard: "[I]t is necessary 'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" 392 U.S. at 20-21, 88 S. Ct. at 1879, citing, *Camara v. Municipal Court*, 387 U.S. 523, 534-37, 87 S. Ct. 1727, 1735 (1967).

Focusing on the government interest, the Commonwealth asserts the automobile is a dangerous instru-

---

[4] In this regard, Mr. Chief Justice WARREN, speaking for the Court in *Terry* stated: "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime . . . 'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." 392 U.S. at 16, 88 S. Ct. at 1877.

mentality, one of the nation's highest ranking causes of death, bodily injury and destruction of property. It is argued that in order to insure the safety of the highways and for the protection of the public, the police should be given the right to stop automobiles at random, without cause, to ascertain if the operator and the vehicle meet the comprehensive standards set forth in The Vehicle Code. On the other side, we must consider the personal liberty and right of the individual to be free from governmental intrusions without apparent reason.[5] On balance, we conclude the interest of the individual outweighs that of the Commonwealth.

The crux of our decision that a stop of a single vehicle is unreasonable where there is no outward sign the vehicle or the operator are in violation of The Vehicle Code, goes to the Commonwealth's argument the police need no justification to stop the vehicle. We rule before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever.

In *Terry*, supra, the Supreme Court aptly stated: "And in justifying the particular intrusion the police officer must be able to point to specific and articuable

---

[5] Mr. Chief Justice TAFT, speaking for the Supreme Court in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280 (1924), stated the following: "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings and effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search. . . ." Id. at 153-54, 45 S. Ct. at 285.

facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to mere detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in his belief' that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); Beck v. State of Ohio, 379 U.S. 89, 96-97, 85 S. Ct. 223, 229, 13 L. Ed. 2d 142 (1964). Anything less would invite intrusions upon constituitonally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g., Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960); Henry v. United States, 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959). And simple ' "good faith on the part of the arresting officer is not enough." . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers and effects," only in the discretion of the police.' Beck v. Ohio, supra, at 97, 85 S. Ct. at 229." 392 U.S. at 21-22, 88 S. Ct. at 1880.

The flaw in the Commonwealth's argument is it asks this Court to give the police absolute discretion and authority to intrude into the lives of people without any cause whatsoever. Under the Commonwealth's theory the police would need no justification to stop an automobile on the highway, and, hence, there could be

no judicial review of the intrusion. There would be no buffer between the citizen and the officer "engaged in the often competitive enterprise of ferreting out crime". *Johnson v. United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948). Furthermore, if the police were given complete discretion to stop any automobile, this discretion could be used arbitrarily, or as a guise for seeking evidence of other crimes, or on mere "fishing expeditions".

The Commonwealth argues the United States Supreme Court has sanctioned searches in regulated activities even in the absence of specific articulated facts to lead the officer to conclude that there is a violation of the law, citing, *See v. City of Seattle,* 387 U.S. 541, 87 S. Ct. 1737 (1967) and *Camara v. Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727 (1967). We reject any implication in this position, that because an individual engages in a regulated activity he thereby forfeits his Fourth Amendment rights. But, accepting the asserted analogy of Motor Vehicle Code inspections and inspections under Housing and Fire Building Codes, we are not persuaded *See* and *Camara,* supra, control the instant facts. In *See,* the "search" was part of a routine, periodic *city-wide* canvass of commercial buildings, and in *Camara* the "search" was part of an *annual* inspection of dwelling houses. These situations lack the arbitrariness inherent in the present case. The "searches" in *See* and *Camara* were part of a systematic plan,[6] whereas, the seizure here lacked any semblance of being part of a systematic plan. The factual situations are very much different.

---

6. Moreover, it must be noted that notwithstanding the nature of the "searches" in *See* and *Camera*, the Supreme Court recognized such searches constituted a significant intrusion upon interests protected by the Fourth Amendment, and such searches, when conducted without the specified warrant procedure, lack the traditional safeguards which the Fourth Amendment guarantees.

We, therefore, hold before a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with The Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver is in violation of the code. See *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S. Ct. 2535 (1973).

Since the instant record is clear the officers had no justification to stop the automobile Swanger was riding in, the stop was constitutionally impermissible, and the "fruits" of the unlawful stop or seizure should have been suppressed. Cf. *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963).

The order of the Superior Court and the judgment of the court of original jurisdiction are reversed and a new trial is ordered.

Mr. Chief Justice JONES and Mr. Justice POMEROY concur in the result.