## Commonwealth v. Heist

*David J. Brightbill,* Assistant District Attorney, for Commonwealth.

*Allen H. Krause,* for defendant.

GATES, P. J., October 18, 1974.—Pennsylvania Game Warden Perry Hilbert filed a complaint and arrested Richard A. Heist for having in his possession two antlerless deer in closed season. Heist was convicted after a hearing before the district magistrate and Heist has appealed to this court.

Defendant has filed a pretrial application seeking to suppress the evidence which consists of deer meat found in the trunk of Heist's automobile. Heist complains that his car was stopped and searched without probable cause and without a warrant, and therefore, he is entitled to have the evidence suppressed.

On April 3, 1974 we held a suppression hearing. As a result of the hearing, the following facts were disclosed.

Beginning in September of 1973, the game warden received complaints that there was out-of-season shooting at nighttime in the area known as Ditzler's farm in Lebanon County. At that time, the warden investigated and observed blood and deer stains on the snow which led to the Ditzler farm area.

On November 3, 1973 the game warden received another complaint of out-of-season shooting at nighttime. He testified that on November 23, 1973, he personally observed hand lights working in the fields apparently by somebody on foot and that he thereafter heard shooting. Again, this was at nighttime and not during the regular deer seasons.

Subsequently, there were reports of nighttime shooting in the same area on November 27th, 29th and 30th. Although these shooting reports were dur-

ing the regular deer season, the shooting was at night at a time when hunting and killing deer is illegal.

On December 1, 1973, Game Warden Hilbert received a report from one of his deputy wardens, Officer Stone, that a hunter had reported seeing two doe deer shot in the same field Hilbert had investigated on September 17th. This shooting occurred in the morning and at a time when antlerless deer killing was illegal. That night, at about 9 p.m., Officers Hilbert, Stone and Weller set up a roadblock at the end of the dirt road leading from the Ditzler farm area to a hard surface road. One officer positioned himself to observe individuals leaving the Ditzler farm area and Officers Hilbert and Weller stationed themselves in a position to stop any vehicles leaving the farm area onto the hard surfaced road. At about 11:30 p.m. Officer Stone communicated by radio to Officers Hilbert and Weller that there was a car leaving the Ditzler farm area and heading in the direction of the township road toward the roadblock. As a result of that information, Officer Stone, who was in full uniform displaying his badge of authority, stopped an automobile coming out the dirt road. The automobile was operated by defendant and the vehicle was searched and the deer meat was confiscated from the trunk of Heist's automobile.

Defendant contends that the game warden did not have probable cause to stop Heist's vehicle and to search it. For the following reason, we disagree.

The Hunting Regulations of the Game Laws of Pennsylvania provide as follows:

"It is unlawful for the operator of any motor vehicle to fail or refuse to stop any such vehicle or conveyance of any kind, being operated upon any public highway within this Commonwealth, upon request or signal of any officer whose duty it is to enforce the

game laws, when such officer is in uniform and shall display his badge or other insignia of identification, for the purpose of inspecting or searching said vehicle or conveyance, its passengers or contents, for the unlawful possession, concealment, or transportation of game of any species, or parts thereof, or to in any manner interfere with any such officer while making such inspection"; Act of June 3, 1937, P. L. 1225, art. VII, sec. 730, 34 PS § 1311.730.

If it were not for Commonwealth v. Swanger, 453 Pa. 107 (1973), we would have little difficulty disposing of this case. But there, amidst a plethora of platitudes, the Supreme Court declared it to be unconstitutional for a peace officer in uniform exhibiting his badge to stop any vehicle for the purpose of inspecting the vehicle as to its equipment and operation or manufacturer's serial number or engine number, and the securing of other information as may be necessary, even though this statute has been on our books for more than 50 years. The specific holding in Swanger was that "before a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with The Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver is in violation of the code." In footnote 3 of the opinion, however, the court notes:

"This opinion should not be read as applicable to systematic stops or roadblocks for detection of The Vehicle Code violations. The issue of the validity of systematic stops of a large number of cars is not now before the Court."

Inasmuch as the instant situation was a roadblock and it was the intention of the Game Law enforcement officers to stop any vehicle leaving the Ditzler farm area, we are not bound by the Swanger holding.

Regrettably, we need no crystal ball to divine that our Supreme Court will require probable cause based on articulated facts to justify the road block itself. However, we are of the opinion that there are sufficiently articulated facts which give rise to reasonable cause for the officers to set up a roadblock on the day and at the time it was done in this case.

The concept of probable cause is illusive and should not be confined to an analysis of facts presented to a court in the antiseptic laboratory of the courtroom. Rather, we should review what facts and circumstances were within the officer's knowledge and of which he had reasonably trustworthy information; and based upon his experience as a game officer, would he be justified in concluding that a roadblock might reasonably discover evidence of deer poaching? Well then, what did Officer Hilbert know?

First of all, he knew from his own knowledge that, in the field in the area known as the Ditzler farm in September, someone was poaching deer. He had personally observed deer blood and deer stains on the snow which led up to the Ditzler farm area.

There was a complaint to him on November 3rd that someone was shooting deer in the same area at nighttime. On November 23rd, he personally observed someone spotting deer with a flashlight and he personally heard shooting. Again this was at nighttime and was not during the antlerless or antlered deer season. Additionally, he had reports of night shooting on November 27th, 29th and 30th. On the day the roadblock was set up, he learned from his fellow officer that there were two doe shot in the same field near the Ditzler farm area that morning. As a Game Law enforcement officer, Hilbert was not unfamiliar with a modus operandi of poachers. Ordinarily, a poacher doesn't illegally shoot game, gut it, throw it on the hood of his

car and drive off. If the game is illegally shot during the daytime or at night for that matter, any self-respecting poacher knows that he had better hide the illegal game and come back on another night when there is no shooting to direct anyone's attention to what is going on. Having reasonable cause to believe that two doe were shot in the same area on the morning of December 1st, it was quite a reasonable assumption that the poacher would return that night and pick up his ill-gotten gains. Thus, the roadblock.

Under the facts and circumstances within the knowledge of Officer Hilbert on December 1, 1973, we are of the opinion that he had probable cause based on facts believed by him to be reliable to set up a roadblock and thus we find that no one's constitutional rights have been offended by what occurred. Therefore, we find no reason to suppress the evidence found in Heist's trunk.

## ORDER

And now, to wit, October 18, 1974, defendant's application to suppress is refused.