Commonwealth v. Grass

*G. Dissinger,* Assistant District Attorney, for Commonwealth.
*Joseph Klein,* for defendant.

DOWLING, *J.,* May 6, 1976—In his excellent treatise on the environmental crisis, The Death of Tomorrow, John A. Loraine states: "Pollution by noise is very much a feature of recent times, particularly of the last two decades. For most of us, noise pollution is inextricably linked with the ever-increasing use which modern society makes of transport."

Yet this is hardly a problem of the times. In the Callimachus, fragment 260, from the third century B.C., we read:

"They fell asleep, but not for long. . . .
the axle creaking under the wagons wakes
   the man who
has his house beside the highway."

For some years, the Commonwealth of Pennsylvania has statutorily recognized the problem of unwanted sound with respect to motor vehicles. As early as 1919, the legislature acknowledged that the blatant noises resulting from the use of internal combustion engines in motor vehicles were a factor which required regulation to protect the public. The Act of June 30, 1919, P.L. 678, sec. 24, replaced by the Act of May 11, 1927, P.L. 886, and which was followed by The Vehicle Code of April 29, 1959, P.L. 58, provided as follows:

"No motor vehicle of any description shall be used or operated on the public highways unless the

engine be muffled so that the explosions thereof shall not constitute a nuisance to the public; and no muffler cut-out shall be used on any public highway in any city, borough, or incorporated town." Section 24 of Act of 1919.

The prohibitions have been enlarged and refined in later years[1] so that we now have quantitative noise limits expressed in the scientific measurement of decibels.[2]

All of which brings us to May 26, 1975, when defendant, while operating a dunebuggy in Susquehanna Township, was stopped by Officer Duschek because of a loud noise emanating from the exhaust system. After another officer, Leitner, was called to the scene to hear the noise, defendant was charged with violation of section 828(c) of The Vehicle Code of 1959, 75 P.S. §828(c) which provides:

"No person shall operate a motor vehicle on any highway (1) equipped with a muffler from which the baffle plates, screens or other original internal parts have been removed or altered; (2) equipped with an exhaust system which has been modified in a manner which will amplify or increase the noise emitted by the motor of such vehicle above that emitted by the exhaust system originally in-

---

1. Amendments of January 26, 1972, to the Act of April 29, 1959, P.L. 58, 75 P.S. §828.3.
2. Some examples of the intensity of various noises:

| Sound source | Noise level and decibel |
|---|---|
| Normal threshold of human ear | 1 |
| Quiet Office | 40 |
| Conversation | 60 |
| Motor car (normal operation) | 70 |
| Niagara Falls | 90 |
| Machine gun at close range | 120 |

stalled on the vehicle; (3) equipped with an exhaust system which has been modified or altered in any way from that furnished by the vehicle manufacturer: Provided, however, That equipment equivalent to that originally used may be substituted when parts are replaced, and provided further, that the exhaust system of a commercial motor vehicle, truck tractor, motor bus or motor omnibus may be modified, altered or relocated if the emitted noise is not thereby increased; or (4) equipped with an exhaust system which has been repaired in any manner except for the substitution of like or equivalent parts.''

The case is before us on Mr. Grass' appeal from his summary conviction.

His able counsel advances four reasons to support his contention that the court sustain the appeal and find defendant not guilty.

Pennsylvania has a somewhat unique provision with regard to proving a violation, requiring that:

''No violation charged under this section for causing excessive noise shall be proved except by the testimony of at least two (2) peace officers who were on the scene of the alleged violation each testifying that in his opinion the noise caused was excessive and each describing such excessive noise.'': Section 828(d) of The Vehicle Code, 75 P.S. §828(d).

Defendant interprets this to mean that two officers must be present at the time of the alleged violation, otherwise the officer lacks probable cause to stop the vehicle. It is true that in Commonwealth v. Swanger, 453 Pa. 107, 307 A.2d 875 (1973), the Supreme Court held that before a police officer could stop a vehicle to determine whether there was a violation of The Vehicle Code,

he must have probable cause indicating such a violation, and that in Commonwealth v. Meyung, 64 D. & C. 2d 350 (1973), the court in Monroe County reversed an order suspending defendant's license for conviction of having altered his driving license on the theory that the stopping of a vehicle for excessive muffler noise was improper because only one officer was on the scene. We feel, however, that counsel as well as the court in the Meyung case is confusing probable cause to stop a vehicle with the burden of proof needed to convict for an improper muffler. The purpose of requiring two witnesses to attest to the cacophony is to make certain that the officer does not simply have an unduly sensitive ear unattuned to the normal blare of traffic.

This leads into defendant's second contention that the officers inadequately described the excessive noise. Duschek said that it was "extremely loud" and Leitner characterized the sound coming from the vehicle "like a fire truck." While it may be true that just as beauty is in the eye of the beholder so noise is in the ear of the listener, and, as a result, may mean different things to different people, we feel that the correct and reasonable view has been set forth by the Texas court in Department of Public Safety v. Buck, 256 S. W. 2d 642 (Tex. Civ. App., 1953), wherein it stated:

"Every motor vehicle when in normal operation necessarily makes some noise, emits some smoke, and permits gas or steam to escape to some extent. They are in constant operation on our streets and highways and even in the sparsely settled areas of our State, they are operated daily within the hearing and view of the citizens.

"We think any ordinary and interested person

would have no difficulty in determining whether or not an excessive and unusual noise or offensive or excessive exhaust fumes accompanied the operation of a motor vehicle."

In Commonwealth v. McConnell, 57 D. & C. 2d 560 (1972), relied upon by defendant, the only evidence on this point was that when defendant's vehicle was idling it made a louder noise than that of a factory equipped muffler. The court held that there should have been some testimony to indicate that the noise emitted would be offensive. We feel the sounds which are characterized as extremely loud and like a fire truck meet the standard of offensiveness.

It is undoubtedly true that many of the younger generation, conditioned on psychedelic rock bands with mammoth amplifiers, develop a somewhat less sensitive ear than those acquired by another generation who perhaps obtained their appreciation of music from a Beethoven quartet or a Mozart concerto. It may also be that the roar of the highly tuned sports car or motorcycle can be the acme of perfection to the young enthusiast but can drive to distraction those living adjacent to a highway. Just as the high pitched scream of a jet airliner may excite the imagination of the youthful adventurer dreaming of faraway places, it can also produce insomnia and psychoneurotic manifestations in people unfortunate enough to reside close to a modern airport. Nevertheless, the inescapable fact emerges that even though living conditions have become progressively noisier, there is a limit, and a reading of section 828 in its entirety indicates its boundaries. See also Commonwealth v. McDonald, 19 D. & C. 2d 253 (1959) on the adequacy of testimony to describe excessive noise.

Defendant advances the position that there can be no conviction under section 828(c) because there was no testimony as to what constituted the original muffler equipment of a vehicle equipped with a muffler from which "the baffle plates, screens or other original internal parts have been removed or altered." Officer Duschek testified as follows:

"Q. Would you describe for us what your examination of this exhaust system revealed sir?

"A. To the rear of the vehicle on the top portion above the engine there are two megaphone mufflers, one on the left and one on the right.

"Q. Continue.

"A. The left rear muffler was completely hollow with no packing or baffles in it. The right rear muffler only had a middle tube which was vibrating in it.

"Q. Would you describe the noise that was emanating in volume from the exhaust system?

"The Court: *What was removed from the muffler?* Tell me that again.

"The Witness: *In the left rear muffler there was nothing present except the hollow outer housing. There was nothing in it except the hollow tube.*

"The Court: What was in the other muffler?

"The Witness: Nothing in the other except a hollow tube which was vibrating. There was no baffles or muffling present."

If the left-rear muffler was completely hollow and the right-rear muffler had only a middle tube, it seems evident that the baffles, packing and other internal parts which deaden the noise had been removed. The object of the statutory provision is designed to protect the public from the use

of mufflers which in any way cause excessive or unusual noises.

Defendant's contention that he was not aware of this condition is no defense, for the statute speaks in terms of absolute responsibility, i.e., operating a vehicle in such a condition. This is not a situation such as was present in Commonwealth v. Bryan, 53 D. & C. 2d 300 (1971), cited by defendant, where a service station owner was road testing a vehicle with improper shackles, a condition of which he was not aware. Mr. Grass had to be cognizant of the fact that even though he was driving a dunebuggy, he sounded like a fire truck.

In any event, the violation is simply mala prohibita and analogous to prosecution for driving an overweight vehicle where it was stated in Commonwealth v. Olshefski, 64 D. & C. 343 (1948):

"It is no defense to a prosecution for driving an overloaded truck in violation of The Vehicle Code that defendant had first obtained a weight certificate from a licensed weighmaster which indicated that the truck was not overloaded, for the offense is complete without any improper intent."

Commonwealth v. Morakis, 208 Pa. Superior Ct. 180, 184, 220 A. 2d 900 (1966), quoted with approval the following pertinent statement:

" 'Many statutes which are in the nature of police regulations, as this is, impose criminal penalties, irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.' "

It sounds to us that the appeal must be dismissed and defendant adjudged guilty.