609 A.2d 809

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Jack A. WHITMYER.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1992.

Filed May 19, 1992.

Reargument Denied July 17, 1992.

Jeffrey Baxter, Asst. Dist. Atty., Carlisle, for the Com., appellant.

Peter B. Foster, Harrisburg, for appellee.

Before McEWEN, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge.

The Commonwealth appeals from an order suppressing all evidence gained as a result of a single vehicle stop. The stop occurred on an exit ramp of a six-lane divided highway. The arresting officer intended to warn the vehicle operator about his "erratic driving" and cite him for traveling at an unsafe speed, a summary offense. We are asked to review the standard applicable in assessing the legality of a traffic stop under these circumstances. We conclude that the suppression hearing court correctly applied the law with respect to the circumstances under which motor vehicles may be lawfully stopped for a summary offense. We accordingly affirm the order which suppressed the evidence.

In reviewing the grant of a motion to suppress, our responsibility is (1) to determine whether the record supports the factual findings of the court below and (2) to evaluate the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Bull,* 382 Pa.Super. 559, 555 A.2d 1341 (1989). In making these determinations, the reviewing court must consider only the

evidence of defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Robinson*, 518 Pa. 156, 159, 541 A.2d 1387, 1389 (1988). While we are bound by the suppression court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Lagana*, 517 Pa. 371, 375–76, 537 A.2d 1351, 1353 (1988). When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Cortez*, 507 Pa. 529, 532, 491 A.2d 111, 112 (1985).

The distinguished trial judge, the Honorable Edgar B. Bayley, has set forth the facts as follows:

On October 30, at approximately 10:20 p.m., Trooper Kambic was in uniform and operating a marked Pennsylvania State Police vehicle traveling south on Interstate 81, approaching the Susquehanna River bridge. Ahead of him was a two-lane ramp for southbound traffic entering the highway on the bridge from Front Street in Dauphin County. The two lanes of the ramp merge into a single lane that then merges into the western most lane of three southbound lanes on the bridge. At a point where the two lanes of the entrance ramp merge into one narrowing lane, there is a solid white line between that merging lane and the western most travel lane on the bridge. After a short distance the white line becomes a broken white line as the entrance ramp further narrows into the through lane on the bridge.

Trooper Kambic observed defendant's vehicle traveling behind another vehicle as the two cars made their way from the entrance ramp onto the single merging lane on the bridge. He then saw defendant drive over the solid white line into the western most southbound lane of the bridge and pass the vehicle in front of him before that vehicle merged into the same lane. There was no evi-

dence, however, that defendant's movement into the southbound lane was careless or reckless, or that he interfered with the trooper's vehicle or any other vehicles proceeding south on the bridge, or with the vehicle that was ahead of him at the point when he passed that vehicle.

As defendant proceeded across the bridge that is seven tenths of a mile in length, Trooper Kambic got behind him. Utilizing his vehicle speedometer for two tenths of a mile, he attempted to ascertain his speed; however, defendant slowed and proceeded onto the Marysville exit ramp at the southern end of the bridge in Cumberland County.

Trooper Kambic testified that he stopped defendant on the exit ramp, intending to warn him about his "erratic driving with respect to his entrance onto the bridge," and cite him for traveling at an unsafe speed at the south end of the bridge. Defendant got out of his car but the trooper, for safety reasons, asked him to get back inside. When defendant got back into the car he rolled down the driver's side window at which time the trooper smelled a strong odor of burnt marijuana. The trooper then ordered defendant out of the car. He told him he smelled marijuana and was going to pat him down and search the vehicle. He discovered a film canister in defendant's right jacket pocket that contained marijuana. The pocket also contained rolling paper (paraphernalia). Defendant was transported to a hospital where he underwent a urine test for the detection of controlled substances in his system.

Opinion, Bayley, J., June 17, 1991, pages 1–3.

■ Judge Bayley, after a full hearing, ordered the evidence suppressed. He ruled:

In order to legally stop a single vehicle for a summary violation of the Vehicle Code, a police officer "must have probable cause based on specific facts which indicate to him either the vehicle or the driver is in violation of the

code." *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973).

Opinion, Bayley, J., at pages 3–4. The suppression hearing court went on to conclude:

> ... [T]here is no evidence to conclude that Trooper Kambic had probable cause to believe that defendant was driving at an unsafe speed. Accordingly, since there was no legal justification to stop defendant, all evidence gained as a result of the stop must be suppressed.

*Id.* at page 7.

In the Summary of Argument portion of its Brief for Appellant, at page 6, the Commonwealth urges us to reverse the suppression order because:

> The lower court erroneously applied a probable cause standard in determining whether Trooper Kambic's stop of the defendant was justified. The proper standard in assessing the legality of a traffic stop in this case is whether the officer had reasonable suspicion to believe that the defendant was violating the Vehicle Code, based on articulable facts.

We are satisfied that Judge Bayley correctly applied the law with respect to when motor vehicles may be lawfully stopped. Both *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973) and *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975), as announced by our Supreme Court, remain the law of this state in motor vehicle cases. The Commonwealth has differed more with the conclusions drawn by Judge Bayley from his application of the law rather than with the trial court's pronouncement of the law itself. Since we believe that the trial court's conclusions are amply supported by the evidence and the law, we will affirm.

In *Commonwealth v. Swanger, supra,* our Supreme Court was considering whether the stop or seizure of a motor vehicle was unreasonable and, therefore, constitutionally impermissible. Speaking through Justice Eagen, the Court declared:

We, therefore, hold before a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with The Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver is in violation of the code.

453 Pa. at 115, 307 A.2d at 879.

In deciding *Swanger*, our Supreme Court was well aware of the decision of the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and in fact cited to, and quoted from, the *Terry* opinion at length. *Swanger, supra*, 453 Pa. at 112–113, 307 A.2d at 878–79.

That this was not careless language by Justice Eagen is borne out by its citation, without dissent, in *Commonwealth v. Murray, supra.* There, the Court had to consider the legality of the stop of an automobile in which the appellant was a passenger. In reversing the previous order of this Court which had affirmed the judgment of sentence, our Supreme Court stated, speaking through then-Justice [now Chief Justice] Nix:

If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code. *Commonwealth v. Swanger, supra*, 453 Pa. at 115, 307 A.2d at 879; see also *Commonwealth v. Boyer*, 455 Pa. 283, 286, 314 A.2d 317, 318 (1974) (footnote omitted).

460 Pa. at 58–59, 331 A.2d at 416–17.

In contending that the trial court "erroneously applied a probable cause standard", the Commonwealth fails to distinguish between the concepts "probable cause to arrest" and "probable cause to believe." The Commonwealth asserts that the legality of a single vehicle traffic stop is measured by whether the officer had "reasonable suspicion to believe" that the driver was violating the Vehicle Code. That

articulation of the rule differs somewhat from that of our Supreme Court: probable cause to believe that the driver was in violation of some provision of the Vehicle Code. *Murray, supra,* 460 Pa. at 58–59, 331 A.2d at 416–17.

Once it is understood that our Supreme Court uses the term "probable cause" in this context to mean "probable cause to believe the Vehicle Code has been violated," the compatibility of the terms is immediately apparent.

It must be borne in mind that the United States Supreme Court limited its use of the term "probable cause" to situations warranting arrest in its analysis in *Terry v. Ohio.* In *Terry,* the petitioner sought to argue that no search of the person should be permitted until the situation evolves to a point where there is probable cause to make an arrest. In responding to that line of reasoning, the Court, speaking through Chief Justice Warren, said:

> There are two weaknesses in this line of reasoning however. First, it fails to take account of traditional limitations upon the scope of searches, and thus recognizes no distinction in purpose, character, and extent between *a search incident to an arrest* and a limited search for weapons. The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon is also justified on other grounds, and can therefore involve a relatively extensive exploration of the person. A search for weapons *in the absence of probable cause to arrest,* however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. . . .
>
> Petitioner's reliance on cases which have worked out standards of reasonableness with regard to "seizures" constituting arrests and searches incident thereto is thus misplaced. . . .
>
> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing

with an armed and dangerous individual, *regardless of whether he has probable cause to arrest* the individual for a crime.... And in determining whether the officer acted reasonably in such circumstances, *due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.*

*Terry v. Ohio,* 392 U.S. at 25–27, 88 S.Ct. at 1882–83, 20 L.Ed.2d at 908–909 (citations omitted, emphasis added).

■ There is no inconsistency between the standard set forth in *Terry* to justify an intrusion short of an arrest, that is to say, a "Terry stop," and the standard enunciated by our state Supreme Court for a single vehicle stop: *probable cause to believe,* based on specific articulable facts possessed by the stopping officer at the time of the questioned stop, that the vehicle or the driver was in violation of some provision of the Vehicle Code. *Murray, supra,* 460 Pa. at 58–59, 331 A.2d at 416–17.

The Commonwealth's contention that the proper standard depends upon "reasonable *suspicion* to *believe*" appears to be a blending, albeit unintentional, of two disparate concepts. The claimed standard is not an express holding in *Terry* set forth above and is not found in any of the pronouncements of our state Supreme Court. The *Terry* court was quite clear in holding:

And in determining whether the officer acted reasonably in such circumstances [where the officer's safety or that of others was in danger], due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

In *Delaware v. Prouse,* 440 U.S. 648, 655, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660, 668 (1979), the United States Supreme Court referred to alternative grounds to support an investigative stop of a motor vehicle. In *Prouse,* the Court cited to *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct.

2574, 45 L.Ed.2d 607 (1975), and referred to that earlier case as having considered "the legality of investigative stops of automobiles where the officers making the stop have *neither probable cause to believe nor reasonable suspicion* that either the automobile or its occupants are subject to seizure under the applicable criminal laws." *Delaware v. Prouse,* 440 U.S. at 655, 99 S.Ct. at 1397, 59 L.Ed.2d at 668 (emphasis added).

We have unearthed nothing in the motor vehicle cases decided by either the United States Supreme Court or the Pennsylvania Supreme Court which would support the use of the phrase "reasonable suspicion to believe" as suggested by the Commonwealth on this appeal.

Finally, our Vehicle Code sets forth a standard defining the authority of an investigating police officer as follows:

### § 6308. Investigation by police officers

.    .    .    .    .

(b) Authority of police officer.—Whenever a police officer ... has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

■ If we apply the standard as articulated by the United States Supreme Court, as restated by our state Supreme Court, or as set forth in the statute, the analysis and result by the distinguished trial court remains unassailable. The critical issue is whether the trooper had articulable and reasonable grounds to suspect, or probable cause to believe, that Jack A. Whitmyer was not driving his vehicle at a safe speed, thereby violating 75 Pa.C.S. § 3361. When we review Judge Bayley's analysis, based upon the undisputed facts, we find no fault with his conclusions.

The trial court found as fact that Trooper Kambic stopped Whitmyer on the exit ramp, intending to warn him about what Kambic believed was Whitmyer's "erratic driving with respect to his entrance onto the bridge," and to cite him for traveling at an unsafe speed. The Commonwealth does not explain the facts from the record which led it to accept Trooper Kambic's subjective conclusion that Whitmyer was traveling in an "erratic" manner. The trial court does provide us with its reasoning, which we find persuasive, on the issue of alleged "erratic" driving:

> There is no evidence that defendant committed a summary offense when he drove onto the Interstate bridge from the entrance ramp. When defendant entered the highway he did not fail to yield to any oncoming vehicle and he did not pass the vehicle in front of him in a posted no passing zone. Driving over the white line into the through traffic lane was not a summary offense. *See* 75 Pa.C.S.A. § 3309 (Purdon 1977). Absent probable cause to believe that the vehicle or the driver *is* in violation of the Vehicle Code, there is no legal justification to stop a vehicle and warn an operator about his driving.

Opinion, Bayley, J., at page 4 (emphasis in original).

We turn, then to whether there was probable cause to believe, or whether Trooper Kambic had articulable and reasonable grounds to suspect, that Whitmyer was not driving his vehicle at a safe speed, thereby violating 75 Pa.C.S. § 3361. That section of the Vehicle Code provides:

### § 3361. Driving vehicle at safe speed

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around [a] curve, when approaching a hill crest, when traveling upon

any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

To reach its conclusion that Trooper Kambic had reasonable grounds to "suspect" that Whitmyer was traveling at an unsafe speed, the Commonwealth must rely only upon two factors: (1) Trooper Kambic's testimony that Whitmyer entered the highway in an "erratic" manner, and (2) the trooper's testimony that he followed Whitmyer for two-tenths of a mile at an estimated speed of seventy miles per hour in a fifty-five miles per hour zone, before Whitmyer slowed and exited the six-lane divided highway.

The Commonwealth has not specified, in its Brief, what portion of § 3361, driving vehicle at safe speed, Whitmyer has violated. The trial court, on the other hand, has set forth its analysis supporting its conclusion that any belief in the alleged violation of the section would be unreasonable. Whether the issue is framed in terms of probable cause to believe a violation has occurred or reasonable and articulable grounds to suspect a violation of the Vehicle Code, or any other standard, the result must be the same.

In granting the motion to suppress, Judge Bayley ruled: Other than Trooper Kambic estimating defendant's speed at seventy miles per hour on a three-lane interstate highway for a period of two tenths of a mile (there was no testimony that defendant was changing lanes or traveling too close to another vehicle), the only other evidence bearing upon a possible Section 3361 violation, was the trooper's testimony that the traffic at the time was medium to heavy. That conclusion is of no legal significance where defendant's speed was only estimated at fifteen miles per hour over the speed limit on a three-lane interstate highway at a time when his vehicle was not changing lanes, traveling too close to another vehicle, or presenting a potential hazard to any other vehicle or person.

A violation of Section 3361 of the Vehicle Code requires more than just traveling at a speed over the posted speed limit. Interpreting a similar section that preceded Section

3361, the Superior Court, in *Commonwealth v. Hoke,* 223 Pa.Superior Ct. 319 [298 A.2d 913] (1972), observed that "[w]hether one is driving too fast for conditions is a relative matter, dependent not on any specific speed but on all the existing circumstances...." *See also Commonwealth v. Way,* 170 Pa.Superior Ct. 109 [84 A.2d 225] (1951). The same analysis has been applied to the current Vehicle Code Section 3361 in *Commonwealth v. Vishneski,* 380 Pa.Superior Ct. 495 [552 A.2d 297] (1989). In *Vishneski,* the Superior Court stated:

> The arresting officer described Route 202 North as a limited access highway having a posted speed limit of fifty-five miles per hour. He further explained that the section of Route 202 North between the Paoli Pike on-ramp and Route 322 exit comprises of three lanes and is approximately one-tenth of a mile in distance.
>
> .  .  .  .  .
>
> The trial record further indicates that there was a truck traveling on Route 202 North at the same time appellant was traveling on the route. Appellant entered the highway from the Paoli Pike on-ramp and exited at the Route 322 exit. It is apparent from the record that appellant's speed was unreasonable given the conditions of the highway. Appellant was traveling at 84.5 miles per hour in a 55 miles per hour zoned area where traffic must merge and exit while competing with the northbound flow of traffic. In addition, we note that appellant was entering and exiting the northbound highway at a high rate of speed within a distance of approximately one-tenth mile. The potential for hazards and conditions rendering traveling at a speed of 84.5 miles per hour unreasonable is clearly supported by the evidence.

Interstate 81 where defendant was driving was a six-lane divided interstate highway. There was no intersecting or merging traffic. Unlike *Vishneski,* there is no evidence to conclude that Trooper Kambic had probable cause to believe that defendant was driving at an unsafe

speed. Accordingly, since there was no legal justification to stop defendant, all evidence gained as a result of the stop must be suppressed. *Commonwealth v. Scherzer*, 40 Cumberland L.J. 374 (1990), *aff'd*, 410 Pa.Superior Ct. 656, [590 A.2d 377].

Opinion, Bayley, J., at pages 5–7 (footnotes omitted).

Judge Bayley correctly found that there was no legal justification to stop Whitmyer on a belief that he was driving at an unsafe speed. We must accept his conclusion that all evidence gained as a result of that stop must be suppressed. Accordingly, we affirm the order which suppressed the evidence.

Order affirmed. Jurisdiction relinquished.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

Upon review of the evidence before us, I am convinced that Trooper Thomas Kambic had "articulable and reasonable grounds to suspect, or probably cause to believe," that appellee Jack A. Whitmyer was not driving his vehicle at a safe speed, thereby, violating 75 Pa.C.S.A. § 3361.

In reviewing the propriety of a suppression order, we are limited primarily to questions of law and are bound by the suppression court's findings of fact if those facts are supported by the record. *Commonwealth v. Elliott*, 376 Pa.Super. 536, 542, 546 A.2d 654, 657 (1988), *allocatur* denied, 521 Pa. 617, 557 A.2d 721 (1989); *Commonwealth v. White*, 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). In determining whether those findings are supported by the record, we consider only the evidence of appellee and so much of the evidence of appellant which remains uncontradicted. *Elliott*, 376 Pa.Superior Ct. at 543, 546 A.2d at 657; *White*, 358 Pa.Superior Ct. at 123, 516 A.2d at 1212.

With those rules in mind, we must determine whether Trooper Kambic had articulable and reasonable grounds to suspect appellant was violating § 3361 of the Motor Vehicle Code. See Opinion of the Majority, p. 9; see also 75 Pa.C.S.A. § 6308(b) ("Whenever a police officer ... has

articulable and reasonable grounds to suspect a violation of [the Motor Vehicle Code], he may stop a vehicle....");  *Elliott*, 376 Pa.Superior Ct. at 545, 546 A.2d at 658 ("a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Motor Vehicle Code is being violated."). The majority has concluded that the trooper did not have reasonable grounds to suspect appellee was traveling at an unsafe speed. However, I am convinced that the majority and the lower court are incorrect.

Instantly Trooper Kambic testified that he stopped appellee to cite him for a violation of 75 Pa.C.S.A. § 3361, Driving vehicle at safe speed, which provides:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit a driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and traffic or by reason of weather or highway conditions.

Trooper Kambic stated that he followed appellant for two-tenths of a mile at seventy (70) miles per hour in a fifty-five (55) miles per hour zone, before appellant exited the highway. Further, the officer testified that appellant entered the highway in an "erratic" manner. He also testified that the traffic on the highway was medium to heavy at the time. I believe such evidence clearly raises articulable and reasonable grounds to suspect appellant was violating 75 Pa.C.S.A. § 3361.

In reaching my decision I considered 75 Pa.C.S.A. § 3362(a) which provides:

(a) General Rule.—Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits

specified in this subsection or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:

(1) 35 miles per hour in any urban district.

(2) 55 miles per hour in other locations.

(3) Any other maximum speed limit established under this subchapter.

Trooper Kambic testified that appellee was traveling at approximately seventy miles per hour. Logically, if the legislature has established fifty-five miles per hour as the maximum lawful speed, appellee's traveling at seventy miles per hour cannot be considered safe. *Cf., Marks v. Mobil Oil Corp.*, 562 F.Supp. 759 (D.C.1983), affirmed 727 F.2d 1100 (Under Pennsylvania law, traveling in excess of the 55 mile per hour speed limit is negligence *per se*).

In addition, I considered the decision of this Court in *Commonwealth v. Vishneski*, 380 Pa.Super. 495, 552 A.2d 297 (1989), appeal denied 524 Pa. 620, 571 A.2d 382 (1989), wherein, we affirmed the conviction of a driver for violating 75 Pa.C.S.A. § 3361. In that case, the officer testified that the driver was traveling 84.5 miles per hour. He described Route 202 North as a limited access highway with a speed limit of 55 miles per hour. He further explained that the section of Route 202 North between the Paoli Pike on-ramp and the Route 322 exit is three lanes wide and is approximately one-tenth of a mile in distance. Upon reviewing the facts, we stated:

... It is apparent from the record that appellant's speed was unreasonable given the conditions of the highway. Appellant was traveling at 84.5 miles per hour in a 55 mile per hour zoned area where traffic must merge and exit while competing with the northbound flow of traffic. In addition, we note that appellant was entering and exiting the northbound highway at a high rate of speed within a distance of one-tenth mile. The potential for hazards and conditions rendering traveling at a speed of

84.5 miles per hour unreasonable is clearly supported by the evidence.

*Vishneski,* 380 Pa.Superior Ct. at 503, 552 A.2d at 301.[1]

The similarity between the facts of *Vishneski, supra,* and the case *sub judice* are remarkable. I cannot envision that in one case, the evidence is sufficient to sustain a conviction, while in the other substantially similar evidence is not even sufficient to raise "articulable and reasonable grounds to suspect" a violation of the same statute. Certainly, the evidence before us is sufficient to meet the *lesser* standard. Whether the evidence once fully developed at trial would be sufficient to sustain a conviction for the offense is irrelevant to our present inquiry. *Accord, Commonwealth v. Fisher,* 294 Pa.Super. 486, 490, 440 A.2d 570, 572 (1982).

In sum, I conclude that Trooper Kambic reasonably believed appellant was in violation of the Motor Vehicle Code and had probable cause to stop appellee for the violation. Therefore, I find that the lower court erred in suppressing all evidence gathered as a result of the stop and I would reverse and remand for trial, *Cf., Commonwealth v. Triplett,* 387 Pa.Super. 378, 382, 564 A.2d 227, 230 (1989); *Elliott, supra.*

---

1. I note that there was no evidence of hazardous weather conditions before the *Vishneski* Court.