## Commonwealth v. Williamson

*Christy Fawcett, assistant district attorney,* for the Commonwealth.
*Ronald Haskell,* for defendant.

UHLER, *J.,* January 22, 1993—This case is before this court on defendant's omnibus pretrial motion. In particular, the defendant requests this court to suppress the evidence found after the defendant was arrested on September 15, 1992.

On December 31, 1992, a hearing was held before this court. In taking the evidence in a light most favorable to the Commonwealth, the following findings of fact were made:

(1) Two officers in an unmarked vehicle, while on duty, were traveling north on Moul Street and then turned left on Carlin Street (an alleyway).

(2) The officers, who were in full uniform, proceeded down Carlin Street and were traveling toward a number of vehicles parked in a perpendicular fashion in a housing project.

(3) The officers observed a vehicle occupied by three individuals, lawfully parked in the first space described above.

(4) This court finds that eye contact was made as between the passenger in the front seat of the first vehicle in question and the officers.

(5) The vehicle commenced backing out of its spot toward the police vehicle. The police vehicle pulled immediately behind the exiting vehicle and then shone its spot light on the vehicle.

(6) The court understands from the testimony of the officer that the exiting vehicle was in a position to exit forward, but instead the driver put the vehicle in park, whereupon the officers exited their vehicle and approached the subject vehicle.

(7) No guns were drawn by the officers.

(8) The officers requested the individuals' identification and conducted a warrant search.

(9) No vehicular violation or any other problems with the vehicle were testified to.

(10) One officer testified that the area in question is one known for high drug trafficking.

(11) The time of the encounter was at 8:42 p.m. and it was dark.

(12) A positive warrant check was transmitted relating to defendant, Williamson. Upon Williamson's removal from the vehicle, it was observed on the floor between his legs, a package with a substance in it, later identified as cocaine.

(13) The total time of the incident took about five minutes.

(14) The officer acknowledged that he would have stopped the vehicle if it would not have stopped.

(15) The officers did not advise the individuals that they could not leave or that they could leave.

At the outset, this court finds that it will grant defendant's request that the evidence be suppressed.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Constitution, Amendment IV. The Fourth Amendment protects people wherever the individual may harbor a reasonable expectation of privacy. *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973). "An automobile is a place where an individual has a reasonable expectation of privacy." *Id.* In justifying a particular intrusion, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, 906 (1968).

In *Swanger,* two officers stopped an automobile, in which defendant was a passenger, for a "routine" check. *Swanger, supra.* The court in *Swanger* held that, "before a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with the Motor Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver are in violation of the Code." *Id.* at 879. See also, *Commonwealth v. Whitmyer,* 415 Pa. Super. 393, 398, 609 A.2d 809, 811 (1992). In *Swanger,* the court found that the officers had no justification to stop the automobile in that there must be present probable cause based upon specific facts that either the driver or the vehicle is in violation of the Code, and that the "fruits" of the unlawful stop should have been suppressed. *Id.*

In the case at hand, the officer testified that because the passenger had made eye contact with the officers and because the car had started to back out as the officers were proceeding down the alley, the police pulled behind the vehicle, shone its light on the vehicle and approached the occupants in the vehicle after the vehicle was stopped. The court finds that these facts alone are not sufficient to justify stopping the vehicle. It seems very logical to this court that the individuals in a vehicle backing up would be looking behind them to see if another vehicle was approaching. Thus, the "making of eye contact" is not a fact which would indicate to this court that criminal activity may be afoot. To the contrary, the passengers were only pursuing consistent behavior when backing from a parking area.

In *Commonwealth v. Dewitt,* 530 Pa. 299, 608 A.2d 1030 (1992), a factually similar case, the trooper testified that he observed a vehicle parked partially on the berm and partially in a parking lot. *Id.* at 1031. The interior lights, but not the exterior lights, were on. *Id.* The trooper thought the vehicle might be disabled. *Id.* The trooper testified that he pulled alongside the vehicle, whereupon the interior lights were turned off and the occupants made suspicious movements inside. *Id.* at 1032. The vehicle then began to pull away. *Id.* In *Dewitt,* the Supreme Court of Pennsylvania found that the facts asserted by the trooper were not sufficient to support the trooper's argument that he had probable cause to carry out a lawful traffic stop. *Id.* at 1033. The Supreme Court also found that the facts were insufficient to support a finding that criminal activity was afoot. *Id.* at 1034.

In another similar case, *In the Interest of F.,* no. 151 Juvenile Action 1990, this court found that there was no reasonable articulable suspicion that a crime had just been or was about to be committed where the defendant's

vehicle pulled over to the side of a one-lane dirt road at approximately 8 p.m. to allow the other vehicle to pass. *Id.* See also, *Commonwealth v. Garner,* 2930 C.A. 1992.

The Commonwealth contends, because the vehicle was able to exit the space by pulling forward, but chose not to, that this was a "mere encounter" and not a seizure. In *Florida v. Bostick,* 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the United States Supreme Court held, "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions," *Id.,* 115 L.Ed.2d at 398. "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Id.,* 115 L.Ed.2d at 398.

In *Bostick,* two officers boarded a bus and without articulable suspicion picked out the defendant and asked to see his ticket and identification. *Id.,* 115 L.Ed.2d at 396. The two officers explained their presence as narcotics agents and then requested the defendant's consent to search his luggage, *Id.,* 115 L.Ed.2d at 396-97. *The police specifically advised the defendant that he had the right to refuse consent. Id.,* 115 L.Ed.2d at 397. (emphasis added) Also, at no time was the defendant threatened with a gun. *Id.,* 115 L.Ed.2d at 397. The United States Supreme Court stated:

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated in a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter." *Id.,* 115 L.Ed.2d at 402. The Supreme Court in *Bostick* refrained from deciding if a seizure occurred because the trial court made no express findings of fact

and the Florida Supreme Court rested its decision on the single fact that the encounter took place on a bus, rather than on the totality of circumstances. *Id.,* 116 L.Ed.2d at 400.

The case at hand is clearly distinguishable from the *Bostick* case. First, there is no evidence that the defendant was free to leave because the Commonwealth failed to sustain its burden on proving the fact that the vehicle could have pulled forward. Except for the officer's opinion that the vehicle could have exited, no dimensions or pictures of the alley were admitted into evidence to serve as a foundation for the opinion. Also in *Bostick,* the officers were "working the buses," which meant the officers would routinely board buses at scheduled stops and ask passengers for permission to search their luggage. 115 L.Ed.2d at 394. In the case at hand, the officers focused their interests upon this particular vehicle, even though the officers did not have articulable suspicion that its occupants were engaged in criminal activity, nor were the suspects advised they did not have to cooperate.

This court finds that since the *Bostick* case is factually different, it is not controlling in this case. However, this court finds that *Commonwealth v. Dewitt* and *In the Interest of F.* are factually similar. As such, this court finds that a seizure without probable cause or articulable suspicion took place because: (1) the police officers parked their vehicle behind the subject vehicle; (2) a search light was shone on that vehicle; (3) the Commonwealth provided no facts to prove that the vehicle could have freely driven away, nor were the occupants told they were free to do so. Thus, this court finds that the intrusion was unreasonable and the evidence found on the floor must be suppressed.

An appropriate order shall be entered.

ORDER

And now, to wit, January 22, 1993, this court orders that defendant's motion to suppress is granted.