**Commonwealth v. Samuel**

C.P. Carbon County, nos. 354 C.R. 94, 355 C.R. 94 and 356 C.R. 94.

*David W. Addy, assistant district attorney,* for the Commonwealth.

*Stephen P. Vlossak,* for Angela R. Samuel.
*Gerald Strubinger,* for Raleigh C. Moore.
*Eric R. Strauss,* for Edward L. Furnace.

LAVELLE, *P.J.,* February 3, 1995—

## MEMORANDUM AND ORDER SUR MOTIONS TO SUPPRESS

Before the court are defendants' motions to suppress drugs and drug paraphernalia confiscated by police during a warrantless car search on June 11, 1994, as well as their written statements to police. Angela R. Samuel, Raleigh C. Moore and Edward L. Furnace Jr. are all charged with unlawful possession of a controlled substance, 35 Pa.C.S. §780-113(a)(16); possession with intent to deliver a controlled substance, 35 Pa.C.S. §780-113(a)(30); possession of drug paraphernalia, 35 Pa.C.S. §780-113(a)(32) and criminal conspiracy, 35 Pa.C.S. §780-

113(a)(30). Their motions raise issues concerning the validity of the stop of their car on Interstate 80, the legality of consent to search and whether there was probable cause to search their vehicle. We conducted a hearing on October 4, 1994 and after careful review of the record and briefs of counsel, we make, in narrative form, the following.

## FINDINGS OF FACT

On June 11, 1994, at approximately 4:16 a.m., Moore, Furnace, and Samuel were traveling westbound on Interstate 80 in a blue Cadillac sedan bearing North Carolina license plates. Furnace, the driver, and Moore, the owner, who was riding as the front seat passenger are both black. Samuel is a Caucasian and was seated in the back of the vehicle. At that time, the Cadillac was traveling 55 mph which was within the posted speed limit, and was following a tractor trailer directly in front of it by less than one car length. (N.T., p. 12.)

Trooper Gregory Miller of the Pennsylvania State Police, Swiftwater Barracks, Troop S, and Trooper Terrance Jankouskas, who were on duty in the same vicinity in their marked patrol vehicle observed this scenario and stopped the blue Cadillac for following too closely, a violation of section 3310 of the Motor Vehicle Code.

As he asked Furnace for his identification cards, Trooper Miller smelled a faint odor of burning marijuana coming from within the car.

Trooper Miller returned to his state police vehicle, wrote out a written warning in the name of Furnace and Trooper Jankouskas prepared a "consent to search" form. Five or six minutes later Trooper Miller had Furnace step from

the vehicle, explained the warning to him and returned his license and registration.

Trooper Miller then asked Furnace whether he had anything illegal in the vehicle. Furnace replied that he did not. After questioning Moore, who was in the front passenger seat, about his destination and where he had been, the trooper asked Moore if he could look through the vehicle. Moore told the trooper that Furnace, being the operator of the vehicle, should be the one to give consent. When the trooper explained to Moore that he had the right to give consent to a search because he was the owner of the vehicle, Moore stated that he did not want to sign anything because he was not the driver and he did not write or read English too well.

Trooper Miller then went back to Furnace and asked Furnace to sign the "consent to search" form. Furnace told Trooper Miller that he too did not read English well after which Trooper Miller read the entire form to him. Furnace verbally consented to the search signed the form and Trooper Miller put an "X" on the consent form in the box stating "with the permission of owner, I have legal access and control over the vehicle to be searched."

Trooper Miller then proceeded to open the trunk of the vehicle and found a brown paper bag containing five clear glass bottles of a substance which Trooper Miller recognized as a cutting agent "for controlled substances." He then searched the interior of the automobile. On the floor behind the passenger seat, he saw Samuel's purse which he opened and found a crack-cocaine pipe and a small amount of white powder. He searched the glove compartment of the vehicle and found drug paraphernalia and a brick shaped object of compressed white powder

which he described as one kilogram of cocaine. All three defendants were then placed under arrest and transported to the state police barracks at Fern Ridge. After the three defendants signed *Miranda* rights waiver forms, each of the defendants made incriminating statements.

## DISCUSSION

Defendants first argue that Trooper Miller's vague and inconsistent testimony raises grave doubts as to why he stopped the vehicle on Interstate 80. They contend we should find that this was a pretextual stop, the sole purpose of which was to search the defendants' vehicle because it had a drug carrier's profile—an expensive car carrying an out of state license with a black driver. We agree that the stop was illegal but for a different reason.

Here the police stop was based on section 3310 of the Pennsylvania Vehicle Code, 75 Pa.C.S. §3310 which provides in pertinent part as follows:

"Section 3310 following too closely:

"(a) *General rule*—The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having due regard to the speed of the vehicles and the traffic upon and the condition of the highway."

The purpose of this provision of the Motor Vehicle Code is to prevent accidents by requiring a driver to have his vehicle under such control that he or she can stop or maneuver safely if the vehicle in front stops or swerves unexpectedly.

In Meyer Law of Vehicle Negligence in Pennsylvania, the author states:

34

"Closely to be associated with the assured clear distance rule—is the statutory prohibition against following too closely. Many of the decisions cited in section 2.21 (assured clear distance ahead) are equally applicable here. No principle of vehicle law is more assiduously applied by the courts than the 'assured clear distance ahead' rule. Although frequently couched in language which makes speed the important element, it will be observed that *control* is the basic obligation here violated." (emphasis ours) Section 2.22, page 21 and section 2.21 page 15.

Having in mind that lack of control is the essence of this violation, we apply the standards for a lawful traffic stop. Any police officer may stop a motor vehicle if he reasonably believes a provision of the Motor Vehicle Code is being violated and request, inter alia a registration check. 75 Pa.C.S. §6308.

Pennsylvania case law makes clear that in order to legally stop a single vehicle for a traffic code violation, a police officer "must have probable cause based on specific facts which indicate to him either the vehicle or the driver is in violation of the code." *Commonwealth v. Swanger,* 453 Pa. 107, 115, 307 A.2d 875, 879 (1973) and *Commonwealth v. DeWitt,* 530 Pa. 299, 303-304, 608 A.2d 1030, 1032-34 (1992). What these cases tell us is that if a stop or seizure of a vehicle for a traffic violation is challenged in court, the police officer must be able to testify to reasonable grounds to support the suspected violation of the Vehicle Code.

In our view, Trooper Miller failed to meet this standard. He did not articulate any lack of control by the driver of defendants' vehicle. He did not tell us what the traffic conditions were nor did he state anything

about the weather or the condition of the highway. The stop occurred at 4:16 in the morning. Trooper Miller testified that the defendants' vehicle was not in excess of the speed limit. His testimony related solely to the distance he observed between the vehicles. We hold that a suspected violation of section 3310 of the Vehicle Code requires more articulation than just "traveling less than one car length" from another vehicle on the highway and a reasonable police officer would not have stopped defendants' vehicle on the facts observed and related to us by Trooper Miller. We find, therefore, that the police officers lacked reasonable suspicion to make a valid "traffic stop."

There being no legal justification to stop defendants' vehicle, all evidence gained as a result of the stop must be suppressed. *Commonwealth v. Whitmyer,* 415 Pa. Super. 393, 609 A.2d 809 (1992). Because this issue is dispositive, we do not address any of the other suppression issues raised by defendants.

## CONCLUSIONS OF LAW

(1) Trooper Miller and Trooper Jankouskas did not have articulable and reasonable grounds to stop defendants' vehicle for a violation of section 3310 of the Pennsylvania Vehicle Code.

We therefore, enter the following:

## ORDER

And now February 3, 1995, the omnibus pre-trial motion by defendants, Angela R. Samuel, Raleigh C. Moore and Edward L. Furnace Jr., in the nature of a motion to suppress is granted and the Commonwealth is precluded from using any evidence obtained as a result of stopping defendants' vehicle on June 11, 1994.