640 A.2d 490

William A. SNYDER, Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

Commonwealth Court of Pennsylvania.

Submitted March 2, 1994.

Decided April 5, 1994.

Kim Wm. Riester, for appellant.

David R. White, Asst. Counsel, Appellate Section, for appellee.

Before CRAIG, President Judge, and COLINS, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

FRIEDMAN, Judge.

William Snyder appeals an order of the Court of Common Pleas of Allegheny County which dismissed Snyder's appeal and affirmed a one year suspension of his operator's privileges by the Department of Transportation (DOT) based upon 75 Pa.C.S. § 1547(b)(1) because of Snyder's refusal to submit to chemical testing. We reverse.

DOT notified Snyder by official notice of September 3, 1991, that his operator's privileges were being suspended because of his refusal to submit to chemical testing. Snyder filed an appeal and the matter was heard de novo by the Court of Common Pleas of Allegheny County on December 11, 1991.

At that hearing, Snyder stipulated that he had been placed under arrest for driving while intoxicated, that he had been asked to submit to chemical testing, that he had been warned of the consequences of refusing to submit to the test and that he had refused to submit to the test. Snyder, through counsel, made clear before any testimony was taken, that he was arguing (1) that the arresting officer did not have reasonable cause to believe that Snyder had been driving while intoxicated, (2) that any testimony concerning the arrest would violate a court order which expunged all criminal records about the incident and (3) that the Carnegie Mellon University (CMU) policeman who arrested Snyder was not a "police officer" as that term is defined in the Vehicle Code. 75 Pa.C.S. §§ 101—9910.

Following Snyder's stipulation, DOT called Paul Helffrich, who identified himself as a campus police officer employed by CMU. He testified that in the early morning hours of July 19, 1991, he received a call about a disturbance behind a fraternity house on campus. Helffrich arrived at the scene and saw two individuals in a car pulling away from a parking spot. Snyder was operating the vehicle. When Helffrich approached the vehicle, he noticed a strong smell of alcohol emanating from the car. Snyder "was swaying in the seat and . . . was evasive and combative in answers to the questions that were asked of him." (Notes of testimony, 12/11/91, p. 13.) Helffrich asked Snyder to perform two field sobriety tests, which he failed. Helffrich then placed Snyder under arrest and turned Snyder over to the custody of a City of Pittsburgh police officer who was at the scene; that officer transported Snyder to the local City police station for the chemical testing.

Snyder makes the same three arguments on appeal that he made before the trial court.[1] We believe Snyder's argument, i.e., that Helffrich was not a "police officer" as defined by the

---

1. Our scope of review is limited to determining if the trial court committed an error of law or abused its discretion and making certain that all necessary findings of fact are supported by competent evidence. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992).

Vehicle Code, is meritorious and warrants a reversal of the trial court's order.[2]

The Legislature has provided:

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests ... *if a police officer has reasonable grounds* to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both....

75 Pa.C.S. § 1547 (emphasis added). The Vehicle Code defines "police officer" as "[a] natural person *authorized by law to make arrests* for violations of law." 75 Pa.C.S. § 102. Thus, a plain reading of section 1547(a) evidences the legislative intent to trigger the provisions of the Implied Consent Law only when a person with legal authority to make an arrest has reasonable cause to believe a motorist has been driving a motor vehicle while intoxicated.

Generally, DOT may meet its burden of proving that a suspension under section 1547 is proper by proving that a motorist:

(1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension.

*Department of Transportation, Bureau of Driver Licensing v. Holsten,* 150 Pa. Commonwealth Ct. 1, 5, 615 A.2d 113, 114 (1992). Snyder, however, challenges Helffrich's authority to arrest generally and asserts that where such a challenge is made, DOT bears the burden of proving that Helffrich does have legal authority to make arrests. On this question of first impression under section 1547, we must agree with Snyder.

**2.** Interestingly, the trial court never discussed this argument.

■ DOT argues that Helffrich, as a CMU campus police-man, has the authority to make arrests under two separate statutes. DOT first asserts that Helffrich is a private police-man as envisioned in 22 Pa.C.S. § 501. That section provides:

Any nonprofit corporation, as defined in 15 Pa.C.S. Pt. II Subpt. C (relating to nonprofit corporations) maintaining a cemetery or any buildings or grounds open to the public ... may apply to the court of common pleas of the county of the registered office of the corporation for the appointment of such persons as the corporation may designate to act as policemen for the corporation. The court, upon such application, may by order appoint such persons, or as many of them as it may deem proper and necessary, to be such policemen.

22 Pa.C.S. § 501(a). Subsection (c) of section 501 makes clear that private policemen so appointed have, *inter alia,* the power to make arrests.

DOT argues that Helffrich falls within the statute because CMU is a nonprofit corporation which has buildings open to the public. Even if the court were able to take judicial notice of these facts, DOT could not prevail on this theory. *Only those persons appointed by court order are private police as envisioned by this section*; if the CMU campus police were such private policemen, DOT could have easily met its section 1547 burden of proving so by introducing a copy of the court order making the appointment. DOT however introduced no such evidence.[3]

DOT next claims that the CMU police have the authority to make arrests under section 2416 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 646. That section clearly gives arrest powers to "[t]he Capitol Police, Commonwealth Property Police and the Security or Campus Police of all State colleges and universities,

---

3. Snyder's attorney made clear at the beginning of the trial in this case that he was challenging the authority of Helffrich to make arrests; thus DOT does not claim surprise in this regard. Had DOT needed additional time, it should have requested a continuance to allow it to obtain the necessary evidence to meet its burden of proving that CMU campus police had the authority to make arrests.

*State aided* or related colleges and universities and community colleges . . . ." DOT states that the Legislature appropriated money for CMU in the fiscal years July 1990–June 1991 and July 1991–June 1992, referring to the Commonwealth's budget for each of those respective years. We do not believe, however, that proving that money was appropriated to CMU established that it is a "state aided" university.

The regulations of the Commonwealth's Department of Education offer the following definition of "state-aided status:" "Classification of a nonprofit institution which is legally authorized to grant degrees; *offers needed, specified higher education services in the public interest of the Commonwealth;* and receives a direct Commonwealth appropriation." 22 Pa. Code § 31.2. Those regulations go on to provide:

## ELIGIBILITY FOR STATE–AIDED STATUS

### § 40.31. Mission.

The institution shall adopt a statement of mission consistent with policies of the [State] Board [of Education]. This shall include academic programs and services which meet the public need, as determined by the Department and by the Board.

### § 40.32. Programmatic information.

(a) The institution shall provide the Department with descriptions of programs which serve the public interest and a need not presently being met by State-supported institutions.

(b) The institution shall demonstrate the measures that have been taken to cooperate with other institutions in the elimination of unnecessarily duplicative programs and shall agree to follow principles and policies of the Board aimed at avoiding unnecessary and wasteful duplication of programs before additional programs are undertaken.

### § 40.33. Agreements.

An institution *shall sign articles of agreement with the Department* to include:

(1) Acceptance of Board policies and regulations to reflect State-aided status and obligations as specified in applicable provisions of Chapter 31 ... and this chapter.

(2) Disclosure of sources of income and expenditures as specified in § 31.14(c)....

(3) Provisions for equal educational opportunity as specified in § 40.2. (Emphasis added.)

These regulations show that before any university can qualify as a "state-aided" university, it must, *inter alia,* sign an agreement with the Department of Education. Yet, DOT introduced nothing at the hearing in this case concerning CMU's status as a "state-aided" university. In fact, the only thing resembling "proof"[4] of this fact is the following statement in DOT's brief to this court:

> Moreover, the state budgets appropriations for CMU for the fiscal year of July 1990 to July 1991 was $400,000. *See* Section 209 of 1990 Pennsylvania Law 7a. Similarly, the appropriation to CMU for the fiscal year from July 1, 1991 to July 1, 1992 was $800,000. *See* Section 209 of the 1991 Pennsylvania laws. Therefore, CMU qualifies as a state aided university....

(DOT's brief, p. 27.) As regarding appropriations to CMU, section 209 of Act 7a of 1990 indicates only that $400,000 was appropriated to CMU through the Department of Commerce for an engineering research center. In 1991, another $400,000 was appropriated through the Department of Commerce for the same reason along with an additional $400,000, again through the Department of Commerce, for a light microscope imaging research center. Given the Department of Education's regulations concerning "state-aided" universities, DOT would have failed to prove *to the trial court* that CMU was "state-aided" with this information alone. Because DOT has failed to prove that CMU is a "state-aided" university, it has failed to prove that Helffrich had authority to make arrests. Helffrich's authority to make arrests is not apparent from the

---

4. When a party wishes to prove a necessary fact by judicial notice, such an offer must be made before the factfinder. A party may not offer "proof" by judicial notice for the first time on appeal.

face of this record. Because we believe DOT was required to offer proof of such authority, and because DOT offered no evidence in this regard, it failed to show that a "police officer" had reasonable cause to believe that Snyder was operating his motor vehicle under the influence of alcohol. Accordingly, we are compelled to reverse Snyder's one year suspension.

## *ORDER*

AND NOW, this 5th day of April, 1994, the December 11, 1991 order of the Court of Common Pleas of Allegheny at No. SA 2524 of 1991 is reversed.