648 A.2d 309

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Dick H. McCANDLESS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 1994.

Decided Oct. 3, 1994.

Bruce L. Getsinger, Cranberry, for appellant.

Marie T. Veon, Dist. Atty. and Gerald Lee Cassady, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

This is an appeal, by allowance, from a memorandum decision of the Superior Court which vacated a suppression order of the Court of Common Pleas of Venango County and re-

manded for trial. Suppression of various statements and blood test results had been ordered in connection with the impending trial of the appellant, Dick H. McCandless, upon charges of driving under the influence of alcohol and driving in excess of speed limits. The facts, as found by the suppression court, are supported by the record and are as follows, 421 Pa.Super. 650, 613 A.2d 29.

On January 5, 1991, at approximately 2:15 a.m., a police officer sitting in a patrol car in the City of Franklin observed a station wagon that appeared to be traveling much faster than other vehicles that had passed by earlier that night on the same street. The officer decided to follow the vehicle to determine whether it was speeding. By driving at a rapid pace for less than one mile, he caught up with the vehicle, but, by then, it had left the City of Franklin and entered the adjoining jurisdiction of Sandycreek Township. The officer began to clock the vehicle, and continued to do so for one-half of a mile. Two-thirds of the clock occurred in Sandycreek Township, and the final one-third occurred after the vehicle left Sandycreek Township and reentered the City of Franklin.* During the clock, the vehicle never traveled less than fifty-five, nor more than sixty, miles per hour. The posted speed limit was forty-five miles per hour.

The officer stopped the vehicle and found that its driver, appellant, was intoxicated. As a result, the present charges were filed.

Appellant sought suppression of the results of a blood alcohol test and of various statements that he gave. Suppression was granted on the basis that the officer's pursuit of appellant from the City of Franklin into the neighboring municipality of Sandycreek Township was improper. This conclusion rested on a provision of the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8953(a), which sets forth the circum-

---

* Upon reentering the City of Franklin, the officer clocked the vehicle for a distance of less than two-tenths of a mile, this being less than the three-tenths of a mile required by statute for speed determinations made via speedometers, 75 Pa.C.S. § 3368(a). Hence, if the distance clocked in Sandycreek Township were to be disregarded, the clocking distance requirement would not be met.

stances under which a municipal police officer can pursue a suspect into a neighboring municipality:

> **(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> . . . .
>
> (2) Where the officer is in *hot pursuit* of any person *for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction* and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(Emphasis added).

The suppression court held that the officer did not have probable cause to believe that appellant was speeding before he entered Sandycreek Township, and, therefore, that there was no cause for the officer to pursue him into that township. The Superior Court disagreed, reasoning that the officer's observation that appellant's vehicle was traveling faster than other vehicles that had traveled on the same road that night was "enough to raise his suspicions and to allow the officer to investigate." We do not agree.

█ The test set forth in 42 Pa.C.S. § 8953(a)(2) is not whether an officer has observed something that would merely raise his suspicions, but rather whether he has probable cause to believe that an offense has been committed within his primary jurisdiction. As the suppression court held, probable cause was lacking in this case.

The officer testified that appellant's vehicle was moving faster than others that he observed on the same night. However, this, without more, is too indefinite to supply probable cause. Nothing in the record provides a basis to estimate the

speed of appellant's vehicle before it entered Sandycreek Township. The officer himself testified that he was unable to give any estimate whatsoever of that speed, and that nothing erratic had been observed with regard to the manner in which the vehicle was being operated. He also testified that he initially had only a reasonable suspicion that the vehicle was speeding, and that he decided to follow it to determine whether, in fact, it was speeding. Clearly, therefore, probable cause to pursue appellant into Sandycreek Township was lacking.

It has been suggested by the Commonwealth that the officer's entry into Sandycreek Township might have been justified on another basis, to wit, that he was there on "official business" separate and apart from his pursuit of appellant. See *Commonwealth v. Pratti,* 530 Pa. 256, 608 A.2d 488 (1992); *Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135 (1991); 42 Pa.C.S. § 8953(a)(5) (permitting police officers to exercise authority in neighboring municipalities when they are there on "official business"). We find no basis in the record, however, to conclude that the officer entered Sandycreek Township for any purpose other than to determine whether appellant was speeding. This being the case, probable cause to believe that an offense had been committed in the City of Franklin was necessary to justify the officer's pursuit of appellant into the neighboring township.

Appellant's motion to suppress was, therefore, properly granted by the lower court. In reversing, the Superior Court erred.

Order reversed.

PAPADAKOS, J., files a dissenting opinion which is joined by CASTILLE, J.

CASTILLE, J., files a dissenting opinion which is joined by PAPADAKOS, J.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

CASTILLE, Justice, dissenting.

The majority holds that the evidence obtained [1] as a result of the officer's stop of appellant in his jurisdiction should have been suppressed because the officer based his stop, in part, upon information he gathered while outside his jurisdiction in violation of the Statewide Municipal Police Jurisdiction Act (the "Statewide Act").[2] Because I do not believe that the Statewide Act is dispositive of or controls our determination of whether the suppression motion should have been granted, I respectfully dissent.

Appellant's only contention is that the officer's stop of him was unlawful because it was based upon evidence obtained *outside* the officer's jurisdiction. In determining whether the evidence must be suppressed, this Court should first determine whether the evidence obtained *within* the officer's jurisdiction permitted a lawful stop of appellant's vehicle *within* the officer's jurisdiction. I would hold that the Superior Court properly reversed the motion to suppress because the evidence obtained *within* the officer's jurisdiction permitted a stop of appellant's automobile based upon a reasonable suspicion that appellant was speeding in the officer's jurisdiction.

In this Commonwealth, an investigatory stop of a vehicle is valid if the stop is based upon objective facts creating a reasonable suspicion that the detained motorist is engaged in unlawful activity. *Commonwealth v. Murray*, 460 Pa. 53, 61, 331 A.2d 414, 418 (1975).[3] Here, the officer saw appellant

---

1. The evidence specifically sought to be suppressed were the results of a blood alcohol test. The majority states that appellant also sought the suppression of certain statements; however, the officer testified that appellant did not make any statements to him. Record at 44.

2. 42 Pa.C.S. § 8953(a)(2).

3. Appellant's reliance upon *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), is misplaced. In *Swanger*, this Court was faced with the issue of whether the police could randomly stop a particular car (not in a road block situation) to determine whether it had violated the motor vehicle code. The Court held that such a random stop violated constitutional prohibitions against unreasonable searches and seizures. Here, the officer had a reasonable basis to believe that a law of this Commonwealth had been violated prior to stopping the car. Thus, his stop of appellant's car was not unreasonable.

substantially speeding past cars on the highway in his jurisdiction at approximately 2:15 a.m. Believing appellant to be speeding in violation of the posted speed limits of thirty-five and forty-five miles per hour, the officer drove approximately seventy miles per hour to catch up with appellant so that he could clock him pursuant to 75 Pa.C.S. § 3368(a).[4] By the time the officer caught up to appellant, the street upon which appellant was driving briefly crossed into another municipality before reentering the primary jurisdiction of the officer. When appellant reentered the officer's jurisdiction, the officer clocked appellant for at least one-sixth of a mile at which time appellant drove at least ten miles over the speed limit. As the Superior Court properly found, this evidence demonstrated a reasonable suspicion by the officer to believe that appellant had violated the speed limits of his municipality. Accordingly, the officer could lawfully conduct an investigatory stop of appellant. Once he lawfully stopped appellant and discovered that appellant evidenced signs of alcohol ingestion, his reasonable suspicion ripened into probable cause for his arrest. The fruits of the stop and of the arrest should, therefore, be admissible.

Furthermore, I believe that the officer could stop appellant based upon what he observed outside his jurisdiction, which together with his other observations, clearly established probable cause for the stop. It is well established that what a person knowingly exposes to the public is not subject to Fourth Amendment protections. *See, e.g., California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *Commonwealth v. Oglialoro,* 525 Pa. 250, 579 A.2d 1288, 1291–92 (1990) (not subject to state or federal protections against unreasonable searches and seizures). Notwithstanding this clear rule, the majority construes the Statewide Act to mean that an officer, while in pursuit of someone he suspects to be

4.  75 Pa.C.S. § 3368 provides, in pertinent part:
    (a) Speedometers authorized.—The rate of speed of any vehicle may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile.

speeding, cannot observe appellant's speeding in another jurisdiction even though any member of the public could do so. In reaching this conclusion, the majority utterly ignores its prior interpretation of the Statewide Act in *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990), wherein the Court specifically noted that Section 8953 *does not* prohibit an officer from leaving their primary jurisdiction to go into other jurisdictions to ask questions therein, to enter a residence therein upon the valid consent of the owner, or to otherwise conduct activities which are unobtrusive police conduct, and observe what they observe therein. *Id.* at 398, 567 A.2d at 1029–30.

In *O'Shea*, certain detectives visited the appellant's home in another jurisdiction, where he lived with his brother and sister-in-law, in order to question him in connection with a robbery and murder of the owner of a store in the detective's jurisdiction from which the appellant had recently been fired. When the detectives arrived at the appellant's home, he was not present. However, the appellant's brother and sister-in-law, the owners of the home, consented to the detectives search of the house. When the detectives searched the home, they found incriminating evidence in plain view. This Court held that nothing in Section 8953 prohibited the police from going into another jurisdiction to conduct the investigative activities that took place. I submit that the officer's mere observation of a driver speeding on a public highway in another jurisdiction constitutes the very "unobtrusive" conduct which this Court has previously interpreted the Statewide Act not to prohibit.

Moreover, even assuming arguendo that the officer's conduct outside his jurisdiction did technically violate the Section 8953, an argument with which I do not agree, this Court also held in *O'Shea* that even if police activities were conducted in violation of Section 8953, suppression of the fruits of the investigation were nevertheless not warranted where the activities of the police amounted to, at best, minor infractions of the Statewide Act. The Court noted that automatic exclusion

of evidence obtained by relatively minor infractions of Section 8953 would be an inappropriate remedy. 523 Pa. at 399, 567 A.2d at 1030. *See Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985) (suppression of evidence was not an appropriate remedy for violation of Rules of Criminal Procedure regarding the issuance and execution of a search warrant outside the officer's jurisdiction).

In viewing the conduct of the detectives in *O'Shea,* this Court found that the detectives' conduct in entering the appellant's *home,* at the most, amounted to only a minor infraction and therefore held that suppression was not warranted. The officer's conduct in this case on a *public highway* failed to rise to even the level of conduct in *O'Shea.* Hence, suppression is equally unwarranted in this case.

The majority fails even to cite to *O'Shea* and instead adopts an overly strict reading which defeats the purpose of the Statewide Act in disregard of its reasoning in *O'Shea,* which the majority adopted only five years ago. The Statewide Act should not be construed to restrict the officer from otherwise being able to do things or act as any member of the public would be able to do or act. Such a construction would require that an officer, simply by virtue of being an officer, avert his or her eyes from evidence of an unlawful act which could have been observed by any member of the public. This was not the purpose of the act.[5] The majority's conclusion to the contrary leads to an absurd result.

Thus, in addition to holding that the officer had reasonable suspicion to stop appellant's automobile based upon his observations in his jurisdiction, I would also hold that where an officer obtains evidence in another jurisdiction that is readily available or exposed to the public, and not by virtue of an obtrusive exercise of his police authority, such evidence is not

5. The Statewide Act is to be construed liberally in order to reasonably broaden police powers (e.g. arrests, execution of search warrants and other official police conduct) outside an officer's primary jurisdiction, and to promote coordination and cooperation between police in different jurisdictions. *See Commonwealth v. O'Shea,* 523 Pa. at 397, 567 A.2d at 1029 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990).

obtained in violation of the Statewide Act; even if it were, the circumstance of this case do not warrant suppression of the evidence.

Accordingly, I would affirm the Superior Court's reversal of the trial court's grant of the suppression motion and remand the case back for trial.

PAPADAKOS, J., joins this dissenting opinion.

PAPADAKOS, Justice, dissenting.

I regret to say that I find the treatment given this case by the majority to be ludicrous. A police officer, sitting in his police vehicle in his primary jurisdiction, sees a car travelling at a more rapid rate of speed than other cars had been travelling past him. Believing that the car is speeding, the police officer takes chase to establish the exact rate of speed and, in doing so, passing into another jurisdiction and returning to his own jurisdiction. During the chase, the police officer clocks the car travelling 10 to 15 miles above the posted speed limit.

Some of the clocking is made in the policeman's primary jurisdiction and some is made in the adjoining jurisdiction. The entire clocking distance exceeds five tenths ($^5/_{10}$) of a mile, some of it in each jurisdiction. The majority finds that since at least three tenths ($^3/_{10}$) of a mile was not clocked in the policeman's jurisdiction, the officer had no probable cause to stop the vehicle and any evidence obtained as a result of the stop must be suppressed. Thus, another drunken driver is set free upon the unsuspecting travelling public.

The majority keys in upon the policeman's observation that the car was travelling at a higher rate of speed than other vehicles and finds this observation, by a trained police officer, to be insufficient for the police officer to believe that the car is speeding. Thus, the majority finds no evidence to support probable cause. I find this reasoning ludicrous because the alternatives are to allow a drunken speeder to continue unhampered or to equip every police car in Pennsylvania with radar guns or similar devices. Ergo, if you do not have hard

evidence to arrest, you cannot stop the vehicle which appears to be speeding.

I read the majority to say, first, that because the officer was unable to articulate in hard terms the actual speed of the vehicle, it must follow that probable cause was lacking: "Nothing in the record provides a basis to estimate the speed of appellant's vehicle." (Slip op., p. 4). The officer, nevertheless, did testify that the vehicle was travelling faster than any other vehicles and sufficient to raise a suspicion.

The majority, second, then seizes upon the officer's use of the word "suspicion," couples it to the absence of evidence of a technical rate of speed, and mystically concludes that there was no probable cause on which to base hot pursuit.

Probable cause has been defined repeatedly in our law as those facts and circumstances existing at the time of arrest which would justify a reasonably prudent person in the belief that a crime has been committed and that the defendant was the probable perpetrator. *Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975). Also see, *Commonwealth v. Dickerson*, 468 Pa. 599, 364 A.2d 677 (1976), and both state and federal cases collected therein. Most importantly for present purposes is our holding that the test for probable cause is not one of certainties but rather one of probabilities with the considerations of everyday life. It is certainly not equivalent to the trial standard of beyond a reasonable doubt. *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974).

In *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), (as quoted in *Dickerson*, 468 Pa. at 609, 364 A.2d 677) it was decided that:

The rule of probable is a practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officer's whim or caprice.

The plain thrust of the majority's holding today is to stand this law on its head by insisting on a form of probable cause in

speeding cases that must come to rest on technical certitude approximating a level of proof of beyond a reasonable doubt. There was no concrete evidence of speeding; the officer betrayed some doubt as to what he thought; and, therefore, say the majority, Appellant was not lawfully arrested.

By concentrating exclusively on the need for technical support, the analysis discounts the fact of the officer's initial observation of relatively higher speed and the necessity of evaluating that precise fact through the intellect of a reasonable person of caution. That is the heart of the matter, and the legal deformity becomes inevitable when this Court, or any court, fails to engage in the task of legal elaboration.

For the foregoing reasons, I dissent.

I also join in the Dissenting Opinion authored by Mr. Justice Castille.

CASTILLE, J., joins this dissenting opinion.