**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lucas R. KNEER, Appellee.**

Superior Court of Pennsylvania.

Submitted June 14, 1999.

Filed Nov. 17, 1999.

Reargument Denied Jan. 26, 2000.

D. Peter Johnson, District Attorney, Lewisburg, for Commonwealth, appellant.

David D. Noon, Sunbury, for appellee.

Before DEL SOLE, ORIE MELVIN and TAMILIA, JJ.

DEL SOLE, J.:

¶ 1 The Commonwealth brings this appeal from an order granting Appellee's motions to suppress physical evidence and identification. We affirm.

¶ 2 Appellee was charged with burglary, criminal trespass, loitering or prowling at night, and theft by unlawful taking stemming from events occurring on the campus of Bucknell University in Lewisburg, Pennsylvania. Appellee filed pre-trial motions seeking to suppress physical evidence and the identification of Appellee by the victim. Following the filing of briefs and a hearing, the trial court granted Appellee's motions to suppress physical evidence and to suppress the identification finding the Commonwealth failed to establish the officers' authority to arrest. This appeal followed.

¶ 3 The Commonwealth presents two issues for our review: (1) whether the trial court committed an abuse of discretion in raising an issue of proof *sua sponte;* and (2) whether the trial court committed an error of law in its interpretation and application of *Snyder v. Commonwealth,* 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994).

¶ 4 When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093 (1993). The suppression court's findings of fact bind an appellate court if the record supports those findings. *Id.* The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. *See Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.,* 535 Pa. 469, 636 A.2d 156 (1994).

¶ 5 The relevant facts, as summarized by the trial court are as follows:

At approximately 1:45 A.M. on March 8, 1998, Mr. [Jerome] Halluitte was returning to his living quarters, located in Roberts Hall on the Bucknell campus. Halluitte described his room as a "split double," meaning two rooms divided by a connecting door. As he was watching television in his roommates' room, Halluitte heard noises coming from his room. As he opened the connecting door, he observed an individual standing in his room. Halluitte described the individual as a young male, approximately 5'8" or 5'9" tall, wearing a blue knit

hat, black hooded sweatshirt, and baggy pants. The individual had sideburns and was poorly shaven. Halluitte testified that he saw the individual for more than one second.

The individual jumped out the window and Halluitte followed. Halluitte noticed another individual running with the suspect. According to Halluitte, neither individual had a skateboard. Unable to overtake the two individuals, Halluitte abandoned the chase and headed to the University's public safety building, where he reported the incident to Sgt. Jonathan Weaver of the Public Safety Office.

Public Safety Officer Donald Wirick testified that while on routine patrol in a University Public Safety Office vehicle he received the report of the burglary in the Roberts Hall suite and also received a description of the alleged perpetrator. Approximately ten minutes later, Wirick observed an individual on a skateboard. According to Wirick, he was struck by the following: 1) the individual had long hair and several days growth of beard; 2) the individual was wearing a wool hat, dark colored top, and baggy pants; 3) the individual did not look like he belonged on Bucknell's campus. However, Wirick noted that he had not received a height and weight description.

Wirick exited his vehicle and approached the individual, who, at this point, was walking on the sidewalk carrying the skateboard. Wirick indicated that he wanted to speak to the individual. The individual advised Wirick that he was a Lewisburg resident and that Wirick should speak to his attorney. After Wirick again told the individual, the individual ran from Wirick. Wirick followed the individual in foot pursuit and radioed that he was pursuing a possible suspect. During the foot pursuit, Wirick lost sight of the individual for thirty to forty-five seconds. Wirick then received a radio transmission from another public safety officer, Michael Griffiths,

who reported that he had stopped the individual on South Fourth Street in the Borough of Lewisburg.

Griffiths testified that while on routine patrol he had heard Wirick's radio call that he was in foot pursuit of a possible suspect. Griffiths then spotted a lone white male wearing a dark top and baggy clothing. Griffiths ordered the individual, who appeared to be fatigued, to stop. The individual sat on a nearby stoop. Griffiths and the individual waited for Wirick and Sgt. Weaver, who arrived within seconds. Griffiths and Wirick detained the individual until a police officer arrived. The first police officers on the scene were two Pennsylvania State Police troopers. Upon their arrival, and after discussion with the Public Safety officers from Bucknell, one of the troopers handcuffed the individual.

Sgt. Weaver then brought Halluitte to the scene to identify the individual. At the time of the identification, Bucknell Public Safety officers, State Police troopers, and an East Buffalo Township police officer who had also arrived on the scene, surrounded the individual. While seated in the Public Safety cruiser with the window up and within four to eight feet of the suspect, Halluitte identified [Appellee] as the individual in his room that night. Halluitte testified that at the time of the identification, [Appellee] was handcuffed, standing against a wall, surrounded by police officers and police vehicles with their lights shining on [Appellee].

¶ 6 Trial Court Opinion, November 16, 1998 at 2–4.

¶ 7 First, the Commonwealth argues the trial court abused its discretion by *sua sponte* analyzing the Commonwealth's burden of proof in establishing the authority of Officer Wirick and Officer Griffiths. The Commonwealth contends that because Appellee initially challenged the off campus authority of the officers under 71 P.S. § 646.1 (Campus Police Powers and

Duties) and Appellee allegedly never showed interest in the issue once it was established that the officers were not "campus police," pursuant to 71 P.S. § 646.1, the court erred in reviewing the matter further.

¶ 8 However, a review of the testimony from the September 29, 1998, pretrial hearing reveals that the Commonwealth brought the issue of the officers' authority to the court's attention when it specifically questioned Donald J. Wirick concerning his authority as a Bucknell officer. In response, the officer stated that he believed his authority came from the Private Police Act of Pennsylvania (22 Pa. C.S.A. § 501). Because the Commonwealth raised the issue of the officers' authority under Section 501 in direct examination, it cannot now assert that the trial court ventured into this area of the law *sua sponte*. Accordingly, we find the claim that the trial court abused its discretion to be meritless.

¶ 9 Next, the Commonwealth asserts the trial court committed an error of law in its interpretation and application of *Snyder v. Commonwealth*, 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994). The Commonwealth claims the trial court interpreted *Snyder* as stating that the only permissible method of proof of the private police officer's authority is to submit into evidence the court order appointing the officer.

¶ 10 In *Snyder*, the Appellant was arrested for driving while intoxicated by a Carnegie Mellon University policeman, with police authority under 22 Pa.C.S.A. § 501. At trial and on appeal, Appellant challenged the authority of the arresting officer. The Commonwealth Court concluded that because the Department of Transportation failed to offer any evidence to prove such authority, it did not meet its burden of proof. In reaching its conclusion, the Commonwealth Court indicated the Department could have met its burden of proof by introducing a copy of the court order making the appointment or requesting a continuance to secure the necessary evidence.

¶ 11 *Snyder* does not require the Commonwealth in all cases involving private police, to introduce a copy of appointment to establish authority. Rather, *Snyder* refers to only one method of establishing authority. Testimony from the officer about his appointment would be sufficient as it would be in any case where police are required to testify as to their authority. In the absence of adequate testimony, the Commonwealth may rely upon other methods to establish the authority of the officer. Those means include producing a copy of the Section 501 order making the appointment;[1] the requesting of a continuance to secure such evidence; or the court taking judicial notice of the court appointment order.[2]

¶ 12 However, in this case there was no testimony by Officer Wirick of his specific appointment or testimony of the appointment of the cooperating officers. We also note that Officer Wirick never testified that he was a police officer, only a "public safety officer." Had he testified that he was a police officer or adequately stated his authority as a public safety officer, that testimony would have been sufficient. Moreover, the Commonwealth failed to utilize any of the above stated options to establish the authority of the officers.

¶ 13 Accordingly, in the absence of adequate testimony or utilization of other methods to establish private police authority, we find the Commonwealth failed to

1. Pursuant to 22 Pa.C.S.A. § 501(b) the oath, together with the decree and order of the court appointing a police officer under the act, is required to be recorded by the recorder of deeds of each county in which it is intended that the police officer shall act.

2. We note that under Pa.R.E. 201(c), which became effective during the pendency of the lower court hearings, the court may, in its discretion, take judicial notice of adjudicative facts, whether requested to or not. Here, no request for judicial notice was made.

meet its burden. Consequently, the Commonwealth's argument to the contrary lacks merit.

¶ 14 Order affirmed.