# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Z. Wilson, Jr.,                          :
                     Appellant     :
                                       :
         v.                              :  No. 709 C.D. 2018
                                         :  Submitted: November 30, 2018
Commonwealth of Pennsylvania,     :
Department of Transportation,          :
Bureau of Driver Licensing             :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE ELLEN CEISLER, Judge


**OPINION BY JUDGE BROBSON**        **FILED: May 20, 2019**


          Appellant John Z. Wilson, Jr. (Licensee) appeals from an order of the Court of Common Pleas of Washington County (trial court), dated April 26, 2018. The trial court dismissed Licensee's statutory appeal of the suspension of his operating privilege by the Department of Transportation (Department), Bureau of Driver Licensing (Bureau), which the Bureau imposed pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law, after Licensee refused chemical breath testing. We will affirm the trial court's order.

## I. BACKGROUND

          On August 25, 2017, Licensee was driving on Washington Road in North Strabane Township. As he did so, Officer Patrick Lee, a North Strabane Township police officer (Officer Lee), while in his parked squad car monitoring

traffic, observed Licensee's vehicle approach and cross two speed lines marked on the pavement. To monitor Licensee's speed, Officer Lee manually started and stopped a stopwatch-based speed calculation device, commonly known as an Accutrak watch (the Accutrak). Officer Lee had programmed the distance between the two speed lines into the Accutrak. When the Accutrak displayed a speed of 60.7 miles per hour (roughly 15 miles per hour above the posted speed limit of 45 miles per hour), Officer Lee pursued Licensee down Washington Road and across a municipal boundary into Peters Township. Officer Lee ultimately found Licensee leaving his vehicle in a shopping center parking lot. He approached and told Licensee that he was stopping him for speeding on Washington Road. Based on the ensuing encounter, Officer Lee arrested Licensee for driving under the influence of alcohol (DUI) and, invoking the Implied Consent Law, asked Licensee to take a chemical breath test. Licensee refused, and the Bureau suspended his operating privilege pursuant to Section 1547(b)(1)(i) of the Implied Consent Law.

Licensee appealed the suspension to the trial court, which held a hearing on April 14, 2018. During the hearing, the Bureau introduced the testimony of Officer Lee. Officer Lee testified that he pursued Licensee as soon as he saw the Accutrak return a speed of 60.7 miles per hour. (Reproduced Record (R.R.) at 7.) He also testified that, to his knowledge, the speeding lines he used to measure Licensee's speed with the Accutrak were 0.0331 miles (or 175 feet) apart. On cross-examination, Officer Lee admitted that he had not personally measured the distance between the lines. (*Id*. at 44.) On being asked about the speed calculation, Officer Lee stated that the Accutrak registered a total transit time between the two lines of 1.96 seconds. (*Id*. at 43.) He explained that his usual practice is to start timing when the vehicle's front tires cross the first line and stop the time when the

2

rear tires cross the second line, but he admitted he could not recall when he started and stopped the Accutrak in this particular instance. (*Id*. at 44-45.) Officer Lee also said that he observed no violations in North Strabane Township other than speeding. (*Id*. at 7, 34.)

The Bureau also presented Officer Lee's testimony about his encounter with Licensee following the stop. Officer Lee explained that, as he stood several feet away from Licensee, he smelled alcohol and noticed that Licensee's eyes were red and glassy. (*Id*. at 13.) Based on those observations, Officer Lee asked Licensee to perform a field sobriety test known as the horizontal gaze nystagmus test (HGN). Licensee performed the test and Officer Lee noticed sustained and distinct nystagmus, possibly indicating intoxication. (*Id*. at 14-17.) He then asked Licensee to perform two other field sobriety tests. Licensee refused and claimed that a medical condition in his leg prevented him from performing the tests, though he did not specify what that condition was. (*Id*. at 17.) Officer Lee then asked Licensee to perform a preliminary breath test, which licensee refused without explanation.

Following that interaction, Officer Lee arrested Licensee on suspicion of DUI, read him the statutory warnings from the Department's Form DL-26A, and, when Licensee still refused to comply, took Licensee to the North Strabane Township police station. (*Id*. at 18-20.) At the station, Officer Lee read Form DL-26A to Licensee a second time, allowed Licensee to read the form himself and sign it, and requested that Licensee perform a chemical breath test. Licensee again refused. The Bureau introduced the signed Form DL-26A into evidence at the hearing. (*Id*. at 22.)

On cross-examination, Officer Lee answered questions about his use of the DUI investigative process. In particular, he admitted that he did not observe any

3

objective indicators of intoxication other than the odor of alcohol, Licensee's glassy eyes, and the results of the HGN test. (*Id.* at 29-36.) Regarding the HGN test, Officer Lee confirmed that the test can yield up to three "clues" or indications of intoxication per eye, for a total of six clues. He testified that he observed only two clues, which, he acknowledged, is consistent with a level of intoxication below the legal limit. (*Id.* at 37-39.)

Licensee also testified at the hearing. He stated that, based upon his own calculations, an error of 0.25 seconds in Officer Lee's timing could have resulted in Licensee's speed being calculated at 6.8 miles per hour faster than his actual speed. Such an error, Licensee testified, could have caused the Accutrak to return a speed of 60.7 miles per hour when Licensee was in fact travelling at only 53.9 miles per hour—a speed at which he could not be stopped for speeding under Pennsylvania law. (*Id.* at 73-74.) He admitted that, of course, such an error could also mean he was travelling faster than the calculated speed. (*Id.*) Licensee also testified about a leg injury that, he contended, prevented his performance of two of the requested field sobriety tests. (*Id.* at 74-75.) Finally, he acknowledged signing Form DL-26A, but he testified that he had trouble hearing Officer Lee's reading of the form and did not hear Officer Lee tell him that his license would be suspended if he refused the chemical breath test. (*Id.* at 78-82.)

The trial court ultimately dismissed Licensee's appeal. In rendering its subsequent Pa. R.A.P. 1925(a) opinion, the trial court relied upon Section 8953 of the Judicial Code, 42 Pa. C.S. § 8953, and Section 1547 of the Vehicle Code, 75 Pa. C.S. § 1547. Section 8953 of the Judicial Code, pertaining to statewide municipal police jurisdiction, provides, in part:

> (a) **General rule.**--Any duly employed municipal
> police officer who is within this Commonwealth, but

4

beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . . .

> (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has *probable cause* to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(Emphasis added.) Section 1547 of the Vehicle Code, pertaining to chemical testing to determine the presence of alcohol or a controlled substance in a person's body, provides, in part:

> (a) **General rule.**--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to [chemical testing] *if a police officer has reasonable grounds* to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of . . . [Section] 3802 (relating to driving under influence of alcohol or controlled substance) . . . .

> (b) **Civil penalties for refusal.**--

> (1) If any person placed under arrest for a violation of [S]ection 3802 is requested to submit to chemical testing and refuses to do so . . . the [D]epartment shall suspend the operating privilege of the person . . . .

(Emphasis added.)

In its opinion, the trial court found Officer Lee's testimony credible and concluded that the Municipal Police Jurisdiction Act (MPJA)[1] authorized Officer

---

[1] 42 Pa. C.S. §§ 8951-8954.

5

Lee to invoke the Implied Consent Law in Peters Township. To support this, the trial court determined that Officer Lee's measurement of Licensee's speed in North Strabane Township gave Officer Lee probable cause to believe that Licensee was speeding. The trial court went on to conclude that Officer Lee's interactions with Licensee following the traffic stop were sufficient to give him reasonable grounds to suspect Licensee of DUI and thus invoke the Implied Consent Law. Finally, the trial court concluded that Officer Lee properly warned Licensee of the license suspension that would follow his refusal to submit to chemical breath testing.

## II.  AUTHORITY UNDER THE MPJA

On appeal,[2] Licensee first argues that the trial court erred in concluding that Officer Lee properly invoked the Implied Consent Law in Peters Township, outside his own jurisdiction. Licensee claims that the Bureau did not demonstrate that Officer Lee possessed the probable cause required by the MPJA in order to exercise police authority in Peters Township. Licensee essentially argues that the Bureau failed to demonstrate the reliability of the speed measurement on which Officer Lee relied. Licensee sets forth four reasons supporting that argument, which we will discuss in detail below.

In response, the Bureau argues that Officer Lee's testimony was sufficient to establish probable cause—and, therefore, authority—under the MPJA. Further, with respect to the first of Licensee's four supporting reasons, the Bureau argues that Licensee waived the issue of the Bureau's failure to demonstrate approval and testing of the Accutrak in accordance with Section 3368 of the Vehicle

---

[2] In an appeal from a driver's license suspension, this Court's review is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Cesare v. Dep't of Transp., Bureau of Driver Licensing*, 16 A.3d 545, 548 n.6 (Pa. Cmwlth.), *appeal denied*, 23 A.3d 1057 (Pa. 2011).

6

Code, 75 Pa. C.S. § 3368 (hereinafter the noncompliance issue). Before addressing the MPJA issue generally and each of Licensee's associated arguments, we first address the Bureau's waiver argument.

## A. Waiver

The Bureau's waiver argument is that Licensee failed to raise the noncompliance issue at two critical points: (1) at the hearing before the trial court, and (2) in his concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). For the following reasons, we disagree.

In order to preserve issues for appeal, a party must raise them at the earliest opportunity within each stage of a proceeding. *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014). Here, Licensee raised a general issue regarding the unreliability of the speed measurement at the hearing, but he did not specifically discuss the noncompliance issue. After the Bureau rested its case, Licensee said he had nothing further "from an evidentiary standpoint," but that he did have some regulations and case law to submit. (R.R. at 88.) The trial court directed the parties to submit those materials subsequently in writing, rather than at the hearing:

> [LICENSEE'S COUNSEL]: Yes, Your Honor. There is some additional regulations [sic] that I also would like to submit.
>
> THE COURT: Okay.
>
> [LICENSEE'S COUNSEL]: Should I talk about it now or just wait?
>
> THE COURT: . . . I can give you a couple days and hold this in abeyance for a week.
>
> [LICENSEE'S COUNSEL]: That's fine. That's probably more efficient to do it in a written format.
>
>  . . . .

7

> THE COURT: . . . I'll give you both till the 11th to submit
> any additional case law or regulation that you would like
> to submit to this Court . . . .

(*Id.* at 88-89.) Accordingly, Licensee filed a post-hearing brief reciting his argument concerning the MPJA, including detailed discussion of the noncompliance issue and regulations related to it[3]—the only regulations relevant in this proceeding. Licensee attempted to introduce those regulations, as well as other relevant law, at the hearing—indeed, he *directly asked* the trial court whether he should discuss them at that point. Thus, Licensee addressed the noncompliance issue at his earliest opportunity to do so—that is, in his post-hearing brief, which was the first opportunity the trial court afforded to advance argument after the Bureau rested its case. *Cf. Campbell*, 86 A.3d at 349 (affirming determination of waiver because "near the close of the hearing, the trial court entertained argument regarding the parties' positions," and licensee raised some arguments but not others in response). Licensee, therefore, preserved the noncompliance issue in the proceedings below.

With respect to waiver under Pa. R.A.P. 1925(b), we note that a party's failure to include an issue in its Rule 1925(b) statement waives that issue on appeal. Pa. R.A.P. 1925(b)(4)(vii). Importantly, however, "[e]ach error identified in the [Rule 1925(b) s]tatement will be deemed to include every subsidiary issue which was raised in the trial court." Pa. R.A.P. 1925(b)(4)(v). Licensee's Rule 1925(b) statement complains that the trial court erred "because [the Bureau] failed to establish that Officer Lee had the authority to arrest [Licensee] . . . under [the MPJA]." The issue of probable cause is clearly a subsidiary issue of the MPJA authority issue, and the noncompliance issue is, in turn, a subsidiary issue concerning probable cause. As we determined above, Licensee raised the

---

[3] 67 Pa. Code §§ 105.71-.75

8

noncompliance issue in the trial court. Licensee's Rule 1925(b) statement is, therefore, deemed to include the noncompliance issue, and that issue is not waived.

## B. Probable Cause

We now examine whether, as Licensee claims, Officer Lee lacked authority to invoke the Implied Consent Law in Peters Township. To invoke the Implied Consent Law outside his own jurisdiction, an officer must have legislative authorization to make an extraterritorial arrest in the jurisdiction where the arrest occurs. *McKinley v. Dep't of Transp., Bureau of Driver Licensing*, 838 A.2d 700, 706 (Pa. 2003). Otherwise, such an officer is not a "police officer" as required by Section 1547(a) of the Implied Consent Law, and any refusal of a chemical test has no legal effect. *Id.* at 704-05; *Horton v. Dep't of Transp., Bureau of Driver Licensing*, 694 A.2d 1, 3 (Pa. Cmwlth. 1997); *see Martin v. Dep't of Transp., Bureau of Driver Licensing*, 905 A.2d 438, 448 (Pa. 2006). The General Assembly has granted extraterritorial authority under the MPJA in limited circumstances, including the circumstance in which a police officer follows a person in hot pursuit into a neighboring jurisdiction. *See* 42 Pa. C.S. § 8953(a)(2). In order to rely upon that particular authority, however, a police officer must "[have] probable cause to believe [that an offense] was committed[] within his primary jurisdiction." *Id*. In keeping with this longstanding framework of authority, the parties do not dispute that Officer Lee's pursuit of Licensee into Peters Township and subsequent invocation of the Implied Consent Law must have relied on probable cause. [4]

---

[4] Because the probable cause requirement arises from the MPJA, on which Officer Lee must have relied, other standards applied to traffic stops outside the MPJA context are not relevant in this case. This includes "reasonable suspicion," upon which the Bureau appears to rely in part, which is insufficient as a matter of law to satisfy the probable cause requirement of Section 8953(a)(2) of the MPJA. *See Cmwlth. v. McCandless*, 648 A.2d 309, 311 (Pa. 1994).

Furthermore, this Court has established that "if [a] licensee raises the issue of the authority of the arresting officer to enforce the Vehicle Code [including the Implied Consent Law], the Court places the burden on [the Bureau] to prove the authority of the arresting officer in essence as a part of [the Bureau's] prima facie showing that the arrest was by a police officer." *McKinley v. Dep't of Transp., Bureau of Driver Licensing*, 739 A.2d 1134, 1136 (Pa. Cmwlth. 1999) (en banc) (internal quotation marks omitted), *vacated on other grounds*, 769 A.2d 1153 (Pa. 2001); *see Kline v. Dep't of Transp., Bureau of Driver Licensing*, 706 A.2d 909, 910 (Pa. Cmwlth. 1998) ("[T]he Department bears the burden of proving that the officer has legal authority to make the arrest."), *rev'd on other grounds*, 741 A.2d 1281 (Pa. 1999); *Snyder v. Cmwlth.*, 640 A.2d 490, 492 (Pa. Cmwlth. 1994) (en banc). Importantly for the instant case, the Bureau's burden includes the obligation to introduce evidence showing that the particular requirements of a statutory grant of authority are satisfied. *See Snyder*, 640 A.2d 490, 492-94 (reversing suspension where Bureau failed to introduce evidence that officer's employing university was "state-aided," when officer's authority rested on statute addressing state-aided institutions). While the *extent* of police authority required by the Implied Consent Law has evolved over time,[5] the Pennsylvania Supreme Court has never disturbed this Court's precedent placing the *burden* of proving the requisite authority on the Bureau once a licensee questions that authority. In sum, once authority under Section 8953(a)(2) of the MPJA becomes an issue, the Bureau bears the burden of demonstrating that the officer had the probable cause required by that section.

---

[5] *See McKinley*, 838 A.2d 700; *McKinley v. Dep't of Transp., Bureau of Driver Licensing*, 769 A.2d 1153 (Pa. 2001); and *Kline v. Dep't of Transp., Bureau of Driver Licensing* 741 A.2d 1281 (Pa. 1999).

10

Probable cause is determined by examining the totality of the circumstances as they appeared to the officer at the time in question. *Cmwlth. v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005), *appeal denied*, 920 A.2d 831 (Pa. 2007). It is not an inquiry into objective fact—*i.e.*, whether the driver was actually speeding—but examines the circumstances as seen "through the eyes of an experienced, trained police officer" and asks whether they *could* support such an officer in a reasonable inference of criminal activity. *Weems v. Dep't of Transp., Bureau of Driver Licensing*, 990 A.2d 1208, 1213 (Pa. Cmwlth. 2010) (quoting *Cmwlth. v. Stroud*, 699 A.2d 1305, 1308 (Pa. Super. 1997)); *see Dommel*, 885 A.2d at 1002; *Turano v. Hunt*, 631 A.2d 822, 825 (Pa. Cmwlth. 1993), *appeal denied*, 647 A.2d 905 (Pa. 1994) ("[P]robable cause is a reasonable ground of suspicion.") The quantum of proof necessary for probable cause is both less than that needed for "proof beyond a reasonable doubt," *Turano*, 631 A.2d at 825, and more flexible than standards of proof in formal trials, *Dommel*, 885 A.2d at 1002 ("[F]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the probable-cause decision." (quoting *Maryland v. Pringle*, 540 U.S. 366 (2003))). Finally, in formulating probable cause, an officer may rely upon his own observations, *Commonwealth v. Harris*, 176 A.3d 1009, 1019-20 (Pa. Super. 2017), and upon other information that is "reasonably trustworthy," *Moody v. Philadelphia Housing Authority*, 673 A.2d 14, 17 (Pa. Cmwlth. 1996).

Examining Licensee's arguments and the evidence in light of the controlling probable cause standard, we are not persuaded that the Bureau failed to show the requisite probable cause in this case. The Bureau presented Officer Lee's testimony that he used the Accutrak his department provided to measure Licensee's

speed at more than 15 miles per hour above the posted speed limit, entirely within his own jurisdiction. It is apparent from Officer Lee's testimony that he relied on his understanding of the distance between the speed lines and the correct procedures for operating the Accutrak to infer that Licensee was speeding. Licensee argues that this inference was not reasonable for four distinct reasons, but after the following analysis, we do not agree.

First, Licensee argues that the Bureau's failure to prove that the Accutrak complied with statutory requirements (the noncompliance issue) precludes probable cause in this case. Section 3368 of the Vehicle Code and associated regulations[6] provide for the classification, approval, testing, and certification of speed measurement devices. Those requirements apply, by their own terms,[7] in proceedings seeking a speeding *conviction*, but are not prerequisites to probable cause. Officer Lee used his department-provided Accutrak to measure Licensee's speed. There is no evidence that he had reason to doubt its accuracy, and the absence of a certification of accuracy from the record is not relevant to whether, *at the time in question*, Officer Lee's inference from the Accutrak's measurement was reasonable. In other words, Officer Lee was entitled to make a reasonable inference, based on his experienced use of the Accutrak, that Licensee was speeding. Licensee's attempt to invalidate the speed measurement on grounds of

_____

[6] This section requires that devices like the Accutrak be "approved by the [D]epartment" and "tested for accuracy" within a period prescribed by the statute. *See* 75 Pa. C.S. § 3368(d). In addition, the Department's regulations establish technical specifications for approved stopwatches and provide for accuracy testing procedures and criteria. *See* 67 Pa. Code §§ 105.71-.75.

[7] Section 3368(b) of the Vehicle Code allows a certificate of testing to serve as competent, prima facie evidence of a device's accuracy "in every proceeding in which a violation of this title is *charged*," and Section 3368(c)(4) provides that "[n]o person may be *convicted*" unless the measured speed is beyond the margin of error established by that section. (Emphasis added.) Licensee was neither charged with nor convicted of speeding in this proceeding.

12

noncompliance with the Vehicle Code would be appropriate when challenging a speeding citation, but it is not relevant to the question of probable cause at issue in this license suspension proceeding.

Licensee is correct that our Supreme Court has discussed noncompliance with Section 3368 of the Vehicle Code in concluding that probable cause was absent in the license suspension context. *See Martin*, 905 A.2d 438; *McCandless*, 648 A.2d 309. But those cases are distinguishable from the instant case under probable cause analysis. In both *Martin* and *McCandless*, the officers used their vehicles' speedometers to measure speed, but they did not do so for the full distance required by the Vehicle Code[8] before leaving their own jurisdictions. The Supreme Court held that a measurement for only part of the required distance does not support probable cause. *McCandless,* 648 A.2d at 310 n.\*, 311.[9] That holding makes sense in the context of speedometer measurements, because the officer knew at the time that he had to measure speed for a certain minimum distance in order to comply with the Vehicle Code, and he alone controlled the distance for which he would follow. Thus, it was unreasonable for him to rely on a measurement for less than that statutorily mandated distance, and probable cause was absent. Here, Officer Lee used his Accutrak in accordance with his training and experience; unlike in the speedometer cases, he did not ignore Vehicle Code requirements with which *he personally* was responsible to comply. Instead, he reasonably relied on the accuracy of his department-provided Accutrak, and his speed measurement supports probable cause.

---

[8] Section 3368(a) of the Vehicle Code permits police to use speedometers to measure speed, but it requires that the speed be measured for at least three-tenths of a mile.

[9] This proposition is contained in the sole footnote of our Supreme Court's opinion in *McCandless*, which is introduced by an asterisk rather than a numeral.

13

Second, Licensee argues that the Bureau did not sufficiently establish the actual distance between the two speed lines. This contention appears to rely on Officer Lee's admission that he did not measure the distance between the lines himself. The relevant inquiry, however, is not the actual distance between the lines, but whether Officer Lee reasonably believed them to be the claimed distance apart. His knowledge at the time—the touchstone for probable cause analysis—included, according to his testimony, the knowledge that his department routinely measured and repainted the speed lines, and that they were 0.0331 miles apart. (R.R. at 43-44.) Even if he was factually mistaken about that distance, his reliance on his knowledge at the time was sufficiently reasonable to support probable cause.

Third, Licensee argues that Officer Lee's timing of Licensee's speed for only 1.96 seconds was too brief and created too much potential for error. Considering Officer Lee's testimony, we find this argument unpersuasive. Officer Lee testified that the distance over which he timed Licensee—175 feet—was greater than in most speed detection setups that his department uses. (*Id.* at 43.) In response to a statement at the hearing that some studies have found longer distances to be more appropriate, Officer Lee said that such information was unknown to him at the time he stopped Licensee. (*Id.* at 44.) Thus, again, he reasonably relied on information available to him at the time and, therefore, had probable cause to believe Licensee was speeding.

Finally, Licensee argues that the speed measurement is unreliable because Officer Lee did not recall exactly when he started and stopped the Accutrak in this particular case. But the fact that Officer Lee *might* have deviated from his usual timing procedures is not sufficient to undermine his other testimony that supports probable cause. He testified that he had been an officer with the department

14

for more than two years when he stopped Licensee, and that he has measured speed at that location with his Accutrak "countless" times (*Id.* at 4, 59.) He also explained that his usual practice is to start the clock when the vehicle's front tires cross the first line, and stop the clock when the rear tires cross the second line, thus creating a margin for error in the driver's favor. (*Id.* at 44-45.) Taken together, this testimony meets the Bureau's burden to prove that Officer Lee reasonably relied on the Accutrak's measurement for probable cause. The absence of certainty does not undo that showing.

In sum, we conclude that the Bureau met its burden of showing the probable cause required by Section 8953(a)(2) of the MPJA, and we find Licensee's arguments to the contrary unpersuasive. We conclude, therefore, that the trial court did not err when it determined that Officer Lee had authority under the MPJA to act as a police officer in Peters Township when he arrested Licensee and asked him to submit to chemical breath testing pursuant to the Implied Consent Law. We now turn to Licensee's second argument on appeal.

### III.  REASONABLE GROUNDS

Licensee also asserts that, even if Officer Lee acted properly under the MPJA to invoke the Implied Consent Law, the Bureau failed to demonstrate that he had reasonable grounds to believe that Licensee had engaged in DUI. In response, the Bureau contends that the trial court properly determined that Officer Lee's credible testimony established that he had reasonable grounds to believe that Licensee had engaged in DUI. Initially, we note that the question of reasonable grounds is a legal one fully reviewable by this Court on appeal. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014).

15

Concerning the Bureau's burden of proof in a license suspension case, we have written:

> It is well established that [the Bureau] must prove . . . [that] the licensee . . . was arrested for driving under the influence by a police officer who had *reasonable grounds* to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol.

*Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018) (emphasis added); s*ee also* 75 Pa. C.S. § 1547(a) (establishing implied consent to testing "if a police officer has *reasonable grounds* to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [the Vehicle Code[10]]" (emphasis added)). The "reasonable grounds" standard under the Implied Consent Law is not demanding, and an officer's belief need not be factually correct in order to be reasonable. *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1259 (Pa. Cmwlth. 2011), *appeal denied*, 44 A.3d 1163 (Pa. 2012). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, *could have concluded* that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999) (emphasis added). An officer need not believe a licensee's statements if other circumstances support a different, but reasonable, conclusion. *See Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1349 (Pa. Cmwlth. 1990) (en banc).

---

[10] 75 Pa. C.S. §§ 101-9805.

16

In determining whether the Bureau has shown reasonable grounds, a court must consider the totality of the circumstances available to the officer at the time, as reflected in the record. *Banner*, 737 A.2d at 1207. There is no set list of prerequisite circumstances for a conclusion of reasonable grounds, but relevant circumstances include the odor of alcohol, uncooperative behavior, and glassy eyes when paired with at least one other physical indication of intoxication. *Stancavage v. Dep't of Transp.*, *Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009), *appeal denied*, 995 A.2d 355 (Pa. 2010). Specifically with regard to uncooperative behavior, "[r]efusing to submit to field sobriety testing can be considered." *Koutsouroubas v. Dep't of Transp., Bureau of Driver Licensing*, 61 A.3d 349, 353 n.7 (Pa. Cmwlth. 2013). In reviewing the Bureau's evidence, we bear in mind that determinations as to the credibility and weight assigned to evidence are solely for the factfinder. *Millili v. Dep't of Transp., Bureau of Driver Licensing*, 745 A.2d 111, 113 (Pa. Cmwlth. 2000) (en banc).

Here, it is not disputed that Licensee was driving the vehicle that Officer Lee stopped. Officer Lee testified that he directly observed an odor of alcohol about Licensee and that Licensee's eyes were red and glassy. Officer Lee administered the HGN field sobriety test and, upon receiving a result consistent with at least some level of intoxication, asked Licensee to submit to two additional field sobriety tests. Licensee refused, explaining that a medical condition in his leg would prevent his performance of those tests—an explanation which Officer Lee was under no obligation to believe, given the other indicia of intoxication he had observed. Officer Lee then asked Licensee to take a prearrest breath test, which Licensee refused without explanation. Based on all of these circumstances, which are established by Officer Lee's credited testimony, we conclude that the Bureau has

17

demonstrated that Officer Lee had reasonable grounds under the circumstances to believe Licensee was driving under the influence of alcohol. The trial court did not err in reaching the same conclusion.

## IV. CONCLUSION

Because the trial court did not err in concluding that Officer Lee (1) had police authority to stop Licensee and invoke the Implied Consent Law in Peters Township, and (2) had reasonable grounds to believe Licensee was driving under the influence of alcohol, the trial court properly denied Licensee's appeal.

Accordingly, we will affirm the trial court's order.

P. KEVIN BROBSON, Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Z. Wilson, Jr.,                             :
                    Appellant            :
                                                      :
            v.                                     :    No. 709 C.D. 2018
                                                      :
Commonwealth of Pennsylvania,        :
Department of Transportation,            :
Bureau of Driver Licensing              :

# **O R D E R**

AND NOW, this 20th day of May, 2019, the order of the Court of Common Pleas of Washington County, dated April 26, 2018, is AFFIRMED.

P. KEVIN BROBSON, Judge